[S.F. No. 23146. In Bank. Sept. 10, 1975.]

THOMAS QUINN, Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA, Defendant and Respondent;
INSURANCE COMPANY OF NORTH AMERICA,
Claimant and Respondent.

**COUNSEL**

Boccardo, Blum, Lull, Niland, Teerlink & Bell, Edward J. Niland and Stanley A. Ibler, Jr., for Plaintiff and Appellant.

Robert E. Cartwright, Edward I. Pollock, William H. Lally, Stephen I. Zetterberg, Robert G. Beloud, David B. Baum and Leonard Sacks as Amici Curiae on behalf of Plaintiff and Appellant.

Hardy, Erich & Brown and John R. Ball for Defendant and Respondent and for Claimant and Respondent.

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, N. Eugene Hill, Edmund E. White and Richard M. Skinner as Amici Curiae on behalf of Defendant and Respondent and Claimant and Respondent.

**OPINION**

**TOBRINER, J.**—Under the workers' compensation statutes[1] a worker may not sue his employer for a work-related injury, but he may recover a judgment from a negligent third party for such an injury. (§ 3852.) From this judgment an employer who has paid his employee compensation benefits may recoup the amount thus expended. (§ 3856.) We must now construe that portion of section 3856[2] which requires the trial court

---

[1]Labor Code, section 3200 et seq. Unless otherwise noted, all subsequent code citations will refer to the Labor Code.

[2]The section, subdivision (b) of which has given rise to this suit, reads in its entirety:
"In the event of suit against such third party:

before reimbursing the employer in such a case as this to determine and order payment of "a reasonable attorney's fee,"[3] a fee based "upon the services rendered by the employee's attorney in effecting recovery both for the benefit of the employee and the employer." We face here the question whether this statute incorporates the principle that an active litigant (here the worker) may require the passive beneficiary of his efforts (here the employer) to contribute toward the payment for the services of litigant's attorney which produced the recovery.

"(a) If the action is prosecuted by the employer alone, the court shall first order paid from any judgment for damages recovered the reasonable litigation expenses incurred in preparation and prosecution of such action, together with a reasonable attorney's fee which shall be based solely upon the services rendered by the employer's attorney in effecting recovery both for the benefit of the employer and the employee. After the payment of such expenses and attorney's fees, the court shall apply out of the amount of such judgment an amount sufficient to reimburse the employer for the amount of his expenditure for compensation together with any amounts to which he may be entitled as special damages under section 3852 and shall order any excess paid to the injured employee or other person entitled thereto.

"(b) If the action is prosecuted by the employee alone, the court shall first order paid from any judgment for damages recovered the reasonable litigation expenses incurred in preparation and prosecution of such action, together with a reasonable attorney's fee which shall be based solely upon the services rendered by the employee's attorney in effecting recovery both for the benefit of the employee and the employer. After the payment of such expenses and attorney's fee the court shall, on application of the employer, allow as a first lien against the amount of such judgment for damages, the amount of the employer's expenditure for compensation together with any amounts to which he may be entitled as special damages under Section 3852.

"(c) If the action is prosecuted both by the employee and the employer, in a single action or in consolidated actions, and they are represented by the same agreed attorney or by separate attorneys, the court shall first order paid from any judgment for damages recovered, the reasonable litigation expenses incurred in preparation and prosecution of such action or actions, together with reasonable attorneys' fees based solely on the services rendered for the benefit of both parties where they are represented by the same attorney, and where they are represented by separate attorneys, based solely upon the service rendered in each instance by the attorney in effecting recovery for the benefit of the party represented. After the payment of such expenses and attorneys' fees the court shall apply out of the amount of such judgment for damages an amount sufficient to reimburse the employer for the amount of his expenditures for compensation together with any other amounts to which he may be entitled as special damages under Section 3852.

"(d) The amount of reasonable litigation expenses and the amount of attorneys' fees under subdivisions (a), (b) and (c) of this section shall be fixed by the court. Where the employer and employee are represented by separate attorneys they may propose to the court, for its consideration and determination, the amount and division of such expenses and fees."

[3] Section 3856 refers to "reasonable litigation expenses" as an additional element to be deducted from the recovery. In briefs and argument parties have stressed the issue of attorneys' fees, probably because of their usually more substantial size, but no good reason appears for distinguishing the other costs of litigation; by reference to attorney's fees, therefore, we shall henceforth in this opinion include as well the other litigation expenses mentioned in section 3856.

As we shall show in more detail, our conclusion that the employer should bear his share of such fees rests upon the equitable principle of apportionment long applied by the courts and upon the Legislature's incorporation of such principle into section 3856. The facts of this case serve to illustrate the reasons for the legislative enactment.

Plaintiff sustained serious injuries in the course of his work on a project for the construction of a dam; he consequently received workers' compensation benefits of $13,942. Plaintiff sued the state, which owned the construction site, alleging its negligence as the proximate cause of his injuries. (§ 3852; Rest. 2d Torts, § 416.) On the first day of trial the insurance carrier which had paid the workers' compensation benefits filed a lien pursuant to section 3856 against any judgment that might result. The carrier did not otherwise participate in the litigation on behalf of the plaintiff.

After a jury trial plaintiff received a verdict and judgment for $91,314.99; the trial court denied defendant's motion for a new trial and for judgment notwithstanding the verdict. Defendant's liability insurer (which by chance had also written the employer's workers' compensation policy)[4] sent plaintiff a draft for $80,231.06, an amount reached by deducting from the judgment and statutory interest the full amount of the workers' compensation benefits paid to plaintiff. Urging that his attorney had performed all the work leading to the recovery, plaintiff then moved for an order apportioning his attorney's fee between himself and his employer.[5] Denial of that motion led to this appeal.

1. *The relevant statutes are based upon principles of apportionment long applied by our courts.*

A brief sketch of the policy of employers' subrogation to workers' recoveries in third party negligence actions and of the legislation

[4]The circumstance that the same insurer had written both the employer's workers' compensation and the state's liability policies simplified the bookkeeping but in no way changed the legal significance of the case. Normally, of course, the liability insurer would issue one check to the subrogated workers' compensation carrier in recognition of its lien, and another to the worker or his attorney. Here that process was merely short-circuited because the state's liability insurer, rather than writing a check to itself as the employer's workers' compensation carrier, simply deducted the same amount from the check it issued.

[5]Insurance Company of North America, which had intervened as the employer's workers' compensation carrier seeking to recoup from the judgment any previously paid workers' compensation benefits, is the party which would be directly affected by any order of apportionment. For the sake of convenience and clarity we shall henceforth include the subrogated workers' compensation carrier in any reference to the employer.

implementing that policy will illuminate the problem in the instant case and the Legislature's resolution of it.

From the earliest workers' compensation statutes, the Legislature has afforded employers an opportunity to shift the financial 'burdens which they incur under those statutes to third parties whose negligence has caused the injuries in question. To this end the Legislature has enacted a series of subrogation statutes which give the employer the right to recover damages (measured by his outlay of workers' compensation benefits) against third parties who are strangers to the employment relation.[6] Thus an employer whose worker has been injured in the course of his employment by the negligence of a third party may recover from that party the amount paid to the worker in workers' compensation benefits. (§§ 3852; 3854.) Moreover, if the worker exercises his own right to sue the negligent third party, an employer stands entitled to claim from any actual recovery the repayment of the amount of the workers' compensation benefits already paid. (§ 3856.) The question we must decide is whether this statute as now framed affects the courts' historical equity practice of apportioning attorneys' fees among those who are the beneficiaries of funds created by the activities of similarly situated litigants. (Dawson, *Lawyers and Involuntary Clients: Attorney Fees from Funds* (1974) 87 Harv.L.Rev. 1597.)

Although American courts, in contrast to those of England, have never awarded counsels' fees as a routine component of costs,[7] at least one exception to this rule has become as well established as the rule itself: that one who expends attorneys' fees in winning a suit which creates a fund from which others derive benefits, may require those passive beneficiaries to bear a fair share of the litigation costs.[8] Articulating the policies underlying this rule and its exception, a prominent scholar of the problems of unjust enrichment has noted that

[6]Statutes 1917, chapter 586, section 26, page 854; 1919, chapter 471, section 8, page 920; 1927, chapter 702, section 1, page 1213; 1931, chapter 1119, section 1, page 2370; 1937, chapter 90, pages 273-275; 1939, chapter 902, section 2, page 2519; 1970, chapter 242, section 2, page 502.

[7]Goodhart, *Costs* (1929) 38 Yale L.J. 849.

[8]*Sprague* v. *Ticonic Bank* (1939) 307 U.S. 161 [83 L.Ed. 1184, 59 S.Ct. 777]; *Central Railroad & Banking Co.* v. *Pettus* (1885) 113 U.S. 116 [28 L.Ed. 915, 5 S.Ct. 387]; *Trustees* v. *Greenough* (1881) 105 U.S. 527 [26 L.Ed. 1157]; *Estate of Reade* (1948) 31 Cal.2d 669, 671-672 [191 P.2d 745]; *Winslow* v. *Harold G. Ferguson Corp.* (1944) 25 Cal.2d 274, 277 [153 P.2d 714]; *Farmers etc. Nat. Bank* v. *Peterson* (1936) 5 Cal.2d 601, 607 [55 P.2d 867]; see *Estate of Stauffer* (1959) 53 Cal.2d 124, 132 [346 P.2d 748]; *Gabrielson* v. *City of Long Beach* (1961) 56 Cal.2d 224, 229 [14 Cal.Rptr. 651, 363 P.2d 883]; *Estate of Korthe* (1970) 9 Cal.App.3d 572, 575 [88 Cal.Rptr. 465].

the denial of an attorney's fee to a prevailing litigant "is a partial denial of justice." (Dawson, *Lawyers and Involuntary Clients: Attorney Fees from Funds* (1974) 87 Harv.L.Rev. 1597.)

While American courts have entertained serious doubts as to the wisdom of adopting the English rule in its entirety, "it seems clear that no policy is undermined by allowing recovery [of attorneys' fees] where the claim for reimbursement can be deflected toward a stranger—where a litigant, suing on a cause of action of his own, has succeeded and it then appears that his success has ensured gains of nonparty strangers. He will be denied recovery from his opponent of his out-of-pocket loss in counsel fees, even though it was his opponent's resistance that caused this loss, mainly because of the deterrent effect on litigation generally if all of its real costs were regularly shifted to losers. But such reasoning is entirely irrelevant to a claim against a complete outsider, to recapture some part of the windfall to him." (Dawson, *supra,* pp. 1600-1601.)

California courts have long applied this principle of apportionment.[9] In *Estate of Stauffer* (1959) 53 Cal.2d 124 [346 P.2d 748], one of the many cases exemplifying its use, we summarized some of the considerations behind the principle: "The bases of the equitable rule which permits surcharging a common fund with the expenses of its protection or recovery, including counsel fees, appear to be these: fairness to the successful litigant, who might otherwise receive no benefits because his recovery might be consumed by the expenses; correlative prevention of an unfair advantage to the others who are entitled to share in the fund and who should bear their share of the burden of its recovery; encouragement of the attorney for the successful litigant, who will be more willing to undertake and diligently prosecute proper litigation for the protection or recovery of the fund if he is assured that he will be promptly and directly compensated should his efforts be successful." (53 Cal.2d at p. 132.)

The instant case therefore might well constitute an appropriate situation for the application of the rule of apportionment, even without reference to the statute. An active litigant has, by bringing and winning this lawsuit, created a fund upon which a nonparticipant in the litigation can draw in order to relieve himself of a legal obligation he would otherwise bear;[10] the passive beneficiary thus necessarily benefits from

---

[9]Representative California cases appear in footnote 8, *ante.*

[10]We would dispel in passing a confusion engendered by the defendant's characterization of himself as a mere lien creditor. While the statute uses this term to describe the

plaintiff's efforts in bringing suit. The employer has contributed neither time, effort, nor money to the now-successful action; he thus seeks to enjoy the benefits of the suit without contributing to its costs. Furthermore, we point out below that the Legislature has clearly referred to this general equitable precept in the statute before us.

2. ■ *The Legislature incorporated into section 3856 the principle of apportionment of attorney's fees.*

All parties agree that the predecessor to the present statute required the courts to apportion attorney's fees between the worker (the active litigant) and the employer (the passive beneficiary of his action). This predecessor statute read, in relevant part: "where the employer has failed to join in said action [against the negligent third party] and to be represented therein by his own attorney, or where the employer has not made arrangements with the employee's attorney to represent him in said action, the court shall fix a *reasonable attorney's fee,* which shall be fixed as a share of the amount actually received by the employer, *to be paid to the employee's attorney on account of the service rendered by him in effecting recovery for the benefit of the employer,* which said fee shall be deducted from any amounts due to the employer." (Stats. 1949, ch. 120, § 2, pp. 355-356; italics added.)

The statute left unclear, however, the priority rights as between the worker's attorney and the employer *in case the recovery should not suffice* both to compensate the attorney and to recompense the employer for his workers' compensation outlay. To remedy this obscurity the Legislature enacted the current statute, which, with an evident eye to the problem of conflicting priorities, specifies that "the court shall *first* order paid from any judgment" the attorney's fee. The statute then goes on to repeat, in substantially similar terms, the language emphasized in the 1949 statute: the court is to order the payment of *"a reasonable attorney's fee* which shall be based solely upon *the services rendered by the employee's attorney in effecting recovery both for the benefit of the employee and the employer."* (§ 3856, subd. (b); italics added.)

The Legislature thus incorporated into its statute the equitable doctrine described above; it required a passive beneficiary of a recovery

---

employer's rights in any actual recovery by the worker, the words "lien creditor" are misleading, for unlike the usual lien creditor; the employer's rights here depend entirely upon the worker's *success* in his third-party suit. Should he lose, the "lien" evaporates; this contingency renders this case virtually identical to the usual "common fund" situation.

to contribute to the expenses of litigation in creating that fund in proportion to his benefit therefrom. Using much of the same language as the 1949 statute, the Legislature then refined and extended its intention that the employer contribute his reasonable share toward the attorney's fee of the worker whose efforts benefit the employer. In the present statute the Legislature continues its mandate to the courts to apportion reasonable attorneys' fees on the basis of benefit to the respective parties, while assuring the worker that he can obtain an attorney by guaranteeing that attorney priority in the event that the judgment recovered should not suffice both to recompense him and to satisfy the employer's claim.

The statute as now framed commands the court to establish a "reasonable attorney's fee" taking into account "the services rendered both for the benefit of the employee and the employer." Such language, far from forbidding the application of the equitable principle of reasonable apportionment, requires it. (Cf. *Witt* v. *Jackson* (1961) 57 Cal.2d 57, 72 [17 Cal.Rptr. 369, 366 P.2d 641].) Both the directive to assess a *reasonable* fee and the mandate to consider the *benefit* to both active and passive beneficiaries of the recovery call for apportionment. Moreover, this consideration of the language of the statute finds support in the general canons of construction applicable to workers' compensation legislation.

The Legislature set forth the governing principle of statutory construction in section 3202, which instructs the courts to construe the entire Workers' Compensation Act "with the purpose of extending their benefits for the protection of persons injured in the course of their employment." This clause requires the courts to view the legislation from the standpoint of the injured worker, with the objective of securing for him the maximum benefits to which he is entitled.

Thus, in a case in which the worker might well stand entitled to contribution toward his attorney's fee *absent* any statutory provision, this court cannot interpret a statute which on its face calls for the weighing of benefits and burdens, as *barring* apportionment of fees. Such an interpretation would violate the legislative intent that we liberally construe workers' compensation statutes to the worker's benefit.

Indeed, to construe the statute as forbidding apportionment of fees would raise questions of conflict with the policy announced in section 3751, which makes it a misdemeanor for an employer to require from a worker any contribution "either directly or indirectly" to cover the cost

of compensation benefits. One of the costs of compensation benefits is the cost of recovering judgments against third parties whose negligence necessitated the payment of those compensation benefits. To construe section 3856 as a legislative demand that the courts assist in precisely such an enforced contribution is therefore to negate the legislative intent underlying section 3751.

By incorporating into the words of the statute the precepts of equity requiring a passive beneficiary to recompense his actively litigating benefactor, the Legislature has directed our courts to apportion fees in relation to benefits; that the Legislature fully intended this result is a conclusion which emerges from the history of the statute in question.

3. *The history of the statutes confirms the intent of the Legislature to require the apportionment of attorneys' fees.*

Until 1947 neither the Legislature nor the courts had considered the question of the apportionment of fees between the worker and his employer who share in a fund created by a suit against a third party; when the issue did arise, however, the Legislature manifested its clear intention that courts should apportion fees in such cases.

Construing the 1939 version of the statute in question, we faced for the first time in *Dodds* v. *Stellar* (1947) 30 Cal.2d 496 [183 P.2d 658], the question of the application of equitable principles to the provisions for attorneys' fees. In that case this court considered a request to apportion attorneys' fees between the active litigant and the passive beneficiary of the action. Writing over the dissent of Justices Carter and Schauer, we ruled that the concept of apportionment had no place in the worker's compensation statute. The Legislature, however, promptly indicated otherwise at its next session, specifically requiring the apportionment of attorneys' fees in cases which went to judgment. (Stats. 1949, ch. 120, § 2, pp. 355-356.)

Moreover, the court in *Dodds* in effect *instructed* the Legislature to draft a statute like the present one if it wished to provide for equitable apportionment. *Dodds* held that the statute as then written expressed the legislative intent *not* to apportion because it required the trial court *first* to satisfy the employer's claims and only thereafter to take care of the worker and his attorney: "In view of these express provisions . . . emphasizing that . . . the statutory recoupment right in favor of the *employer* or its insurance carrier has *first* consideration, there is no basis

for . . . apportioning litigation expenses between the parties benefiting from the recovery." (*Dodds* v. *Stellar, supra,* 30 Cal.2d 496, 505; (italics added.) Following the suggestions implicit in the passage just quoted, the Legislature, in providing first for the *worker's* attorney's fee, has written the statute *precisely* in the manner the *Dodds* court indicated would express a legislative intent to enact apportionment; we must give effect to this clear expression of the legislative will. Moreover, events subsequent to *Dodds* make clear the steadfastness of the Legislature's intent to apportion.

Five years after *Dodds* litigants asked us to apply the doctrine of apportionment to the analogous situation of out-of-court settlements. In *R. E. Spriggs, Inc.* v. *Industrial Acc. Com.* (1954) 42 Cal.2d 785 [269 P.2d 876], this court held that the Legislature's provision for apportionment in cases in which judgment was pronounced did not warrant the application of that principle to cases settled before judgment. Once more the Legislature promptly enacted legislation to the contrary; it expressed its preference for the views of Justice Carter, who again in dissent had urged the application of the traditional equitable doctrines to cases in which settlements had been reached. (Stats. 1957, ch. 615, § 1, p. 1825.)

In 1959 the Legislature recodified the statutes and provided for the priority of attorneys' fees in cases in which the recovery did not satisfy both the claim for a reasonable attorney's fee and the recoupment of an employer's workers' compensation payments; the present litigation arises from this recodification. Defendant argues that because the new statute compressed and reworded the former enactment, which had clearly provided for apportionment, we should assume that the Legislature meant to obliterate the procedure that it had twice invoked in the previous decade. A reading both of the legislative history and of the words of the statute, however, points to the contrary.

First, as we have shown above, the Legislature used significant portions of the former statute verbatim, thus inviting reference to the former interpretation. Second, as we have shown, in rewriting the statute the Legislature carefully observed the ruling in *Dodds:* that by placing the attorney's fee first in the claims against the worker's recovery it could effect equitable apportionment of fees. (See *Dodds* v. *Stellar, supra,* 30 Cal.2d 496, 504-505.) Third, other purposes, unrelated to the apportionment of fees, explain the other changes that the Legislature did make. The 1959 legislation evidently had two such goals. It sought primarily to effect an equitable adjustment in the amount with which the

employer would be credited against future benefit awards.[11] As we have explained, it secondarily intended to increase the incentive for attorneys to press workers' cases by assuring them that the employer's recoupment would not deny them recompense for their efforts in litigating the case. Thus we find both an entirely consistent alternative explanation for the legislative changes and an indication in the retained wording that the courts were still to apply the principle of apportionment.

This interpretation obtains additional support from the circumstance that leading legislative commentators writing contemporaneously with the passage of the legislation gave no hint that the Legislature repealed the mandate to apportion attorneys' fees. Both the annual summary of legislation prepared by the Committee on Continuing Education of the Bar,[12] and Witkin's Summary of California Law[13] treated the amendments as essentially technical, a conclusion entirely in accord with the routine and uncontested passage of the bills by the Legislature.[14] Such contemporaneous construction of course may shed important light on legislative intent. (*First Nat. Bank* v. *Kinslow* (1937) 8 Cal.2d 339, 346 [65 P.2d 796].)

Turning to the arguments of defendant, we shall show they do not suffice to establish that apportionment of attorneys' fees conflicts with equitable principles or with their legislative incorporation in section 3856.

4. *Neither the contention that apportionment of attorneys' fees constitutes "double recovery" nor the argument based upon legislative inaction establishes that the Legislature did not intend to require such apportionment.*

We shall first answer the contention of the employer and his amicus that apportionment of attorneys' fees constitutes "double recovery" for the employee. The employer apparently argues that such apportionment conflicts with the policy against recovery from multiple sources for the

---

[11]The system of crediting, or offsetting future compensation awards by the amount which the worker actually recovers from a third party, is set out in sections 3858 and 3861. See footnote 18, *infra.*

[12]34 State Bar J. 583, 708-709 (1959).

[13]2 Witkin, Summary of California Law (7th ed. 1965 Supp.) section 16, page 525.

[14]The Journal of the Assembly, Regular Session 1959 notes that the bill was passed as part of the "Consent Calendar," a category for uncontroversial bills which have no opposition. (Handbook, Cal. Legislature (1959) pp. 416-417.)

same damages,[15] citing for that proposition a federal case construing a different statute.[16] While the exact meaning which the employer assigns to the term "double recovery" does not emerge from the briefs, the two possible constructions of this argument cannot stand because they either dissolve into fiction or ignore a central aspect of the situation—the contingency of recovery.

On the one hand, the employer apparently suggests that if one makes any reduction in the employer's recoupment of previously paid benefits, the claimant receives to that extent overlapping awards—one from the tort claim and the other from workers' compensation. Yet this argument ignores the central fact of this case: *the claimant owes legal fees,* the very fees to be apportioned. Thus in the present case the judgment for some $90,000 was subject to claims not only for reimbursement of compensation benefits of some $13,000 but also to the legal fees which plaintiff urges that his employer share. The employer seems to conjure up a situation in which an attorney's fee exists exclusively for the purpose of apportionment but does not affect the worker's recovery. This aspect of the problem of "double recovery" thus dissolves upon examination into a fiction.

. The alternative reading of the "double recovery" argument appears to rest on the assertion that the contribution toward attorneys' fees serves to increase the total workers' compensation benefits received by the worker. This contention proceeds, however, from a basic misconception.

To be sure, our interpretation will increase the plaintiff's present tort recovery and decrease the employer's recoupment of past benefits, but to characterize this result as an increase in compensation benefits is to ignore reality. The fact that the employer must pay some portion of his recoupment to the worker as a share of the attorney's fee does not make this payment additional *workers' compensation:* the employer's payment does not fulfill his obligation under the compensation statute; it recompenses the *attorney* for his services.

---

[15]In support of his argument, employer's amicus cites *Witt* v. *Jackson, supra,* 57 Cal.2d 57; *Corley* v. *Workmen's Comp. Appeals Bd.* (1971) 22 Cal.App.3d 447 [99 Cal.Rptr. 242] (overruled in *Roe* v. *Workmen's Comp. Appeals Bd.* (1974) 12 Cal.3d 884, 892 [117 Cal.Rptr. 683, 528 P.2d 771]); and *Sanstad* v. *Industrial Acc. Com.* (1959) 171 Cal.App.2d 32 [339 P.2d 943]. Each of these cases concerns the potential double recovery in the event that the benefits themselves were not recouped; none deals with attorneys' fees as such.

[16]*Petition of Sheffield Tankers Corporation* (N.D.Cal. 1963) 222 F.Supp. 441, construing 33 United States Code section 933 (Longshoremen's & Harbor Worker's Compensation Act).

The employer's second contention, that legislative inaction in face of court decisions allegedly invalidating apportionment of attorneys' fees demonstrates legislative approval of these rulings fails on two counts. First, we note that *this* court has never passed on the question of apportionment under the current statute; the Legislature might reasonably conclude that it should await our definitive interpretation of the statute. Second, we need only mention the general principle of statutory construction that legislative inaction is indeed a slim reed upon which to lean. (E.g., *United States* v. *Price* (1960) 361 U.S. 304, 310-311 [4 L.Ed.2d 334, 338-340, 80 S.Ct. 326].)

If, then neither "double recovery" nor legislative inaction presents obstacles to our resolution of the present dispute, we must proceed to frame instructions for the trial court on remand.

5. *The trial court on remand should apportion attorney's fees on equitable principles.*

On remand (as upon proper motion after judgment in future cases), the court should proceed first to calculate a reasonable attorney's fee, a fee which reflects the total services rendered to *both* beneficiaries of the recovery. ■ Having fixed that fee,[17] the court must then make a reasonable apportionment of it between the parties benefitted by the recovery.[18] Such an apportionment will, of course, often involve only a relatively simple proportional calculation, but such simplicity will not be the invariable rule. The court should consider, for instance, whether the worker's attorney's efforts in disproving a defense under the rule announced in *Witt* v. *Jackson* (1961) 57 Cal.2d 57 [17 Cal.Rptr. 369, 366 P.2d 641], have accounted for a disproportionate amount of the litigation. Other factors may suggest themselves to the sound discretion

[17]If a case should arise in which the amount of recovery does not suffice both to compensate the attorney and to satisfy the employer's lien, the statute provides that the attorney's fee has prior claim on the fund. (§ 3856.)

[18]The consequences of the calculation of sums to be deducted from the judgment before payment to the employee becomes apparent in the related area of crediting sums recovered by the employee against present and future compensation benefits otherwise payable by the employer or his insurer. (§§ 3858 and 3861.) For while section 3856 affirms the court's power to apportion attorneys' fees equitably, it simultaneously increases *pro tanto* the employer's credit against present and future benefit payments; the worker receives the credit benefits only of those fees he actually pays. Thus whatever the employer foregoes in instant recapture of benefits he gains in credit against continuing payments otherwise due or against permanent disability awards that may be made in the future.

of the courts, acting always under the guidance of the traditional equitable principles whose application we have examined above.[19]

■ From the foregoing it appears that *Fuchs* v. *Western Oil Fields Supply* (1972) 25 Cal.App.3d 728 [102 Cal.Rptr. 74], and *Moreno* v. *Venturini* (1969) 1 Cal.App.3d 286 [81 Cal.Rptr. 551], which reached constructions of an analogous statute contrary to that here announced, are disapproved.[20]

In conclusion, we point out that the employer asks us to abnegate the application of the equitable principle of apportionment which this court has recognized for many years; he asks us to assume that the Legislature has forbidden us to apply this principle in spite of the Legislature's clear expressions to the contrary. He asks us to construe a statute so as to require the injured worker to pay the lawyer's entire charge for a recovery, part of which will benefit only the employer. Yet if the employer receives his fair share of the recovery, he must bear his fair share of the cost of the recovery.

The order of the trial court is reversed and the cause is remanded for a hearing on the setting and allocation of attorneys' fees in a manner consistent with the principles announced in this opinion.

---

[19]It follows from the foregoing that the principle of equitable allocation of fees does not confine itself to the situation to which section 3856, subdivision (b), addresses itself; in like manner it will apply to the remainder of the subdivisions of section 3856. Thus when the *employer's* attorney bears the entire litigative burden, the judge on proper motion will make the same reasonable allocation of fee and litigation costs between the employer and the worker, taking into account the service performed for the benefit of each. (§ 3856, subd. (a).) And likewise when the employer and worker arrange to receive representation from the same attorney: the same adjustment of fee in terms of the service rendered to the two clients and apportionment of this fee between those benefitted follows from the statute. (§ 3856, subd. (c).)

Only when each party separately employs his own attorney does the statute direct the court to relinquish this duty of equitable apportionment, a legislative mandate fully in keeping with the development of a case law in this area. (§ 3856, subd. (c); see *Estate of Korthe* (1970) 9 Cal.App.3d 572, 577 [88 Cal.Rptr. 465]; Dawson, *Lawyers and Involuntary Clients: Attorney Fees From Funds* (1974) 87 Harv.L.Rev. 1597, 1649-1650.)

[20]*Fuchs, Moreno,* and *Johnson* v. *L. D. S. Trucking Co.* (1967) 254 Cal.App.2d 496 [62 Cal.Rptr. 501], which intimated a rule contrary to that here announced dealt with attorneys' fees in cases involving settlements rather than judgments and thus fell under section 3860. Because the Legislature has evinced its intention that settlement and judgment situations be treated alike (see *R. E. Spriggs, Inc.* v. *Industrial Acc. Com., supra,* 42 Cal.2d 785; Stats. 1957, ch. 615, § 1, p. 1825) and because section 3860, like section 3856, calls on the court or board to look to "the benefit of both the employer and the employee" in apportioning fees, the considerations set forth in this opinion as to section 3856 apply equally to section 3860.

Wright, C. J., Mosk, J., Sullivan, J., and Burke, J.,* concurred.

**CLARK, J.**—I dissent.

The majority, having framed the problem before us as one of statutory construction, decides that Labor Code section 3856, subdivision (b),[1] requires an employer to share the costs incurred in his employee's action against a third party tortfeasor. I cannot agree.

In interpreting a statute we must begin with the guidance provided by the Legislature. The task of the courts "is simply to ascertain and declare what is in terms or in substance contained [in the statute], not to insert what has been omitted, or to omit what has been inserted; . . ." (Code Civ. Proc., § 1858.) While this is the short answer to the instant problem, more extended discussion is in order.

Section 3856 of the workers' compensation law has a long history in this state. This history aids in ascertaining the statute's proper construction. (*In re Davis* (1936) 18 Cal.App.2d 291, 295 [63 P.2d 853].) In *Dodds v. Stellar* (1947) 30 Cal.2d 496 [183 P.2d 658], this court was confronted with the contention that, despite the absence of express statutory language so providing, the employee should be allowed attorney's fees for that portion of the judgment going to satisfy the employer's lien. Section 3856 then read in its entirety: "The court shall first apply, out of the entire amount of any judgment for any damage recovered by the employee a sufficient amount to reimburse the employer for the amount of his expenditures for compensation. If the employer has not joined in the action or has not brought action, or if his action has not been consolidated, the court, on his application, shall allow, as a first lien against the entire amount of any judgment for any damages recovered by the employee, the amount of the employer's expenditures for compensation."

Rejecting plaintiff's equitable common fund argument, this court stated in *Dodds:* "If such analogy were followed so as to impress a proportionate liability for attorney fees upon the employer's or insurance carrier's lien for 'expenditures for compensation,' its full reimbursement as accorded by statute would be to that extent nullified." (*Id.,* at p. 505.)

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

[1]Unless otherwise noted, all code sections cited hereinafter are found in the Labor Code.

We continued: "If there is to be any change in these statutory provisions defining the rights of the parties, the suggestion for such change should be addressed to the Legislature rather than to the courts." (*Id.*, at p. 506.)

Two years later the Legislature amended section 3856 to provide for the sharing of attorney's fees. (Stats. 1949, ch. 120, § 2, pp. 355-356.) But contrary to what the majority would infer, this legislative action cannot be read as an endorsement of wholesale application of the "concept of apportionment" to the workers' compensation laws. Moreover, to say that the Legislature acted to provide the relief plaintiff sought in *Dodds* is far from saying that *Dodds* was wrongly decided. Indeed we indicated as much in *R. E. Spriggs, Inc.* v. *Industrial Acc. Com.* (1954) 42 Cal.2d 785 [269 P.2d 876], in which we were asked to determine whether the analogous section relating to settlements (§ 3860) provided for apportioned fees. It was contended that failure to modify section 3860 to provide for apportioned fees at the same time section 3856 was so amended was purely a legislative error. However, we concluded: "The amendments show no legislative intention to alter the reimbursement provisions relating to settlements, and there is nothing in them to warrant a conclusion that a failure to amend the applicable sections was due to a legislative oversight." (*Id.*, at p. 789.) We again proceeded to refer pleas for change to the representative branch of government—the Legislature.

In 1957, section 3860 was amended to provide for shared attorney's fees. (Stats. 1957, ch. 615, § 1, p. 1825.) However, this provision was short-lived as in 1959 the Legislature modified and reorganized, inter alia, sections 3856 and 3860, deleting from both the language requiring apportionment of attorney's fees. (Stats. 1959, ch. 1255, § 2, p. 3387.) Not surprisingly, the deletion of these provisions was regarded as signifying a change in the law. (See *Carden* v. *Otto* (1974) 37 Cal.App.3d 887, 893 [112 Cal.Rptr. 749]; *Fuchs* v. *Western Oil Fields Supply* (1972) 25 Cal.App.3d 728, 736 [102 Cal.Rptr. 74]; *Moreno* v. *Venturini* (1969) 1 Cal.App.3d 286, 290 [81 Cal.Rptr. 551]; *Johnson* v. *L.D.S. Trucking Co.* (1967) 254 Cal.App.2d 496, 499 [62 Cal.Rptr. 501]; *Branscum* v. *State Comp. Ins. Fund* (1965) 232 Cal.App.2d 352, 356 [42 Cal.Rptr. 682].) Ordinarily: "By deleting an express provision from an existing statute, a presumption arises that the Legislature intended a substantial change in the law." (*Wallace* v. *Department of Motor Vehicles* (1970) 12 Cal.App.3d 356, 361 [90 Cal.Rptr. 657]; *Clements* v. *T.R. Bechtel* (1954) 43 Cal.2d 227, 231 [273 P.2d 5].) Today the majority, unimpressed and unabashed, reads these deleted provisions back into the law.

The majority correctly observes that "the Legislature used significant portions of the former statute verbatim, thus inviting reference to the former interpretation" (*ante*, p. 172). But the majority fails to draw the correct inference from this fact. The former interpretation to which reference is invited is the interpretation given the statute *in the absence of an express provision regarding apportionment of fees*, i.e., the interpretation of this court in *Dodds* and *R. E. Spriggs, Inc.*

The only meaning the majority ascribes to the Legislature's 1959 recodification of the statutes is the establishment of the priority of attorney's fees, and, in sections 3858 and 3861, the provision for offsetting future compensation awards by the amount which the worker recovers from a third-party. The alteration of the priority of payments does not explain deletion of the fee apportionment language. Nor do the reasons for changing *sections 3858 and 3861* explain the modification of *sections 3856 and 3860.*

The majority opinion relies on the failure of legislative commentators to discuss the deletion of the apportionment provisions as supporting the proposition that the Legislature intended to continue the mandate for apportionment of attorney's fees. (*Ante,* p. 172.) One wonders why, if legislative inaction in the face of wayward statutory interpretation is "a slim reed upon which to lean" (*ante,* p. 175), the absence of authoritative discussion of new legislation should support any more weight.

Moreover, consideration of the "contemporaneous construction" of section 3856, subdivision (b), as that term is used in the case cited by the majority, *First Nat. Bank* v. *Kinslow* (1937) 8 Cal.2d 339 [65 P.2d 796], does not support the majority's conclusion. In *Kinslow* the term "contemporaneous construction" was used to describe the interpretation of a statute accepted by practitioners over a period of time. (*Id.,* at p. 346.) Applying that description here, the "contemporaneous construction" of section 3856, subdivision (b), has been that, absent express provision therefor, the section does not permit apportionment of fees.

Uncertain of its path but sure of its goal, the majority asserts: "The instant case . . . might well constitute an appropriate situation for the application of the rule of apportionment, even without reference to the statute." (*Ante,* p. 168). The majority then proceeds to argue that the Legislature actually incorporated this principle into section 3856, subdivision (b). This conclusion is reached by stressing certain language of the section—"reasonable attorney's fee," and "the services rendered both for

the benefit of the employee and the employer"—and the rule of liberal construction of the workers' compensation laws (§ 3202).

The provision for assessment of a *reasonable* fee is only to be expected. Presumably the Legislature decided against establishing a fee schedule in the workers' compensation sphere. Having done so, what standard other than "reasonable" was to be established? And the fee, to be reasonable, *must* take into account the recovery awarded in the action, i.e., the benefit to both employer and employee. (See, e.g., *In re Osofsky* (S.D.N.Y. 1931) 50 F.2d 925, 927.)[2] The internal logic of this language precludes the innovative reading given it by the majority.

Finally, the statutory rule of liberal construction, relied on by the majority, does not invest this court with power to administer workers' compensation as we see fit. (*Ruiz* v. *Industrial Acc. Com.* (1955) 45 Cal.2d 409, 413 [289 P.2d 229].) Once we refused, as we should now refuse, to use this rule to escape the clear effect of statutory language, even if the Legislature might not have fully appreciated the significance of its nomenclature. (*Earl Ranch, Ltd.* v. *Industrial Acc. Com.* (1935) 4 Cal.2d 767, 769 [53 P.2d 154].) "California has authorized a liberal construction of its law, to be sure; but how far in that direction 'liberality' may extend would seem to depend upon two considerations: (1) the latitude permitted by the wording of the statute which is to be construed; and (2) the latitude permitted, within such limitations, by the views of the reviewing tribunal. The first is a limitation of an objective character; the second is a subjective or personal limitation. When the latter ignores the former, question may well arise as to where liberal interpretation ends and nullification begins." (2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed. 1975) p. 8-15.) We must eschew the temptation to become crusaders. (*Id.,* at pp. 8-11 to 8-12.)

The majority's emphasis throughout is on the applicability of the "common fund" concept to the facts at hand. Accordingly, I turn to this argument.

"The announced purpose of the 'common fund' device for awarding fees is to reach and prevent a peculiar form of unjust enrichment . . . ." (Dawson, *Lawyers and Involuntary Clients: Attorney Fees From Funds* (1974) 87 Harv.L.Rev. 1597, 1625-1626.) One may question wherein the

---

[2] If the employee's attorney succeeds in obtaining a judgment, a portion of which is repayable to the employer, surely a reasonable fee would be based on the total recovery, not just the amount remaining after the employer's portion had been subtracted.

employer's recovery prior to this decision was unjust, inasmuch as he received back only what he had paid—no more and, until today, no less. While it is true that California courts have long applied this principle of apportionment, it is equally true that they have done so only in very limited circumstances, e.g., trust or probate matters.[3]

The bases of the equitable rule—"fairness to the successful litigant who might otherwise receive no benefit . . . ; correlative prevention of an unfair advantage to the others . . . ; encouragement of the attorney for the successful litigant . . . "[4]—are not present in the peculiar setting of workers' compensation. An employer, unlike the ordinary claimant to a common fund, is not interested in *getting* a share of the fund, but in *getting back* what he has paid owing to the fault of a third party. The majority chooses to attribute no significance to the Legislature's characterization of the employer as a "lien creditor." I submit that a more natural construction leads to the conclusion that the employer was meant to be regarded as a true lien creditor *at such time as the injured employee recovers judgment from a third-party tortfeasor.* When an ordinary plaintiff recovers in tort, he is allowed no offset of his attorney's fees against his creditors, even though the suit indirectly created the fund for repayment. It is to this analogy that the characterization of the employer as a "lien creditor" should lead.

The ultimate strength of the majority position is neither law nor logic, but rather its implicit appeal to some ill-defined sense of fairness. A closer analysis of the result, however, dispels this deceptive aura. Consider a situation in which the injured employee is awarded a $30,000 judgment against a third-party tortfeasor. Reasonable attorney's fees (and costs) amount to $10,000, and $15,000 is repayable to the employer as the amount paid in workers' compensation benefits. If attorney's fees are apportioned, the employee will receive $10,000 of the judgment, leaving $10,000 for the employer. If fees are not apportioned the employer will receive his full $15,000, leaving only $5,000 for the employee. But it must be recalled that the employee has already received $15,000 in compensation benefits, giving him a total award of $20,000—*just what he would have received if there had been no worker's compensation benefits.* Apportionment gives him a total of $25,000 while the employer is out of pocket $5,000. (See Lasky, *Subrogation Under the California Workmen's Compensation Laws—Rules, Remedies and Side*

---

[3] See California cases cited by the majority. (*Ante,* p. 167, fn. 8.)
[4] *Estate of Stauffer* (1959) 53 Cal.2d 124, 132 [346 P.2d 748].)

*Effects* (1972) 12 Santa Clara Law. 1, 19.) Concepts of equity cannot be viewed as sanctioning such a result.

The primary purpose of the workers' compensation law is indisputable. It is "to insure to the injured employee and those dependent upon him adequate means of subsistence while he is unable to work and also to bring about his recovery as soon as possible in order that he may be returned to the ranks of productive labor." (*Union Iron Wks.* v. *Industrial Acc. Com.* (1922) 190 Cal. 33, 39 [210 P. 410].) The holding of the majority—by admission—does nothing to further this purpose. "To be sure, [the majority's] interpretation will increase the plaintiff's present tort recovery and decrease the employer's recoupment of past benefits, but to characterize this result as an increase in compensation benefits is to ignore reality." (*Ante,* p. 174.) Unfortunately, the holding is not just neutral with respect to the concerns of workers' compensation. "In the legislative policy dealing with workmen's compensation, concern for the cost of the system has always been an important element." (Lasky, *supra,* 12 Santa Clara Law. at p. 2.) This concern is expressed in the subrogation provisions of the act. Whenever possible, the employer is to be made whole. By so providing the Legislature has clearly struck a balance between the protection of the injured employee and the burden on the employer and ultimately the consuming public. This court should refrain from strained interpretation of legislative intent upsetting this balance. "A decision considered solely in terms of eliminating 'the compensation carrier's free ride' . . . can have many side-effects which go far beyond the range of such a simplistic analysis." (*Id.,* at p. 35.)

There are undoubtedly those who would ridicule a decision which, following *Dodds* and *R. E. Spriggs, Inc.,* refers the employee to the Legislature for the relief he seeks. But it is not the province of this court to anticipate legislative direction. To anticipate the Legislature here, correctly or not, is necessarily to usurp the legislative function.

McComb, J., concurred.