Dennis ROONEY, Plaintiff,

v.

UNITED STATES of America, Defendant and Third-Party Plaintiff,

v.

CONTEL CORPORATION and Information Technology, Inc., a Joint Venture, et al., Third-Party Defendants,

Reliance Insurance Company, Plaintiff in Intervention.

Nos. C–73–0842 WHO, C–74–1815 WHO.

United States District Court, N. D. California.

April 27, 1977.

R. Jay Engel, Law Offices of Engel & Warner, San Francisco, Cal., for plaintiff Rooney.

James L. Browning, Jr., U. S. Atty., Richard F. Locke, Asst. U. S. Atty., San Francisco, Cal., for defendant and third-party plaintiff.

Robert L. Hines, Hauerken, St. Clair, Zappettini & Hines, San Francisco, Cal., for third-party defendant Contel Corporation.

James P. Shovlin, Shovlin & Babin, San Francisco, Cal., for third-party defendant Information Technology, Inc.

Roger G. Eliassen, Eliassen, Postel & Mee, San Francisco, Cal., for third-party defendants Contel and Information Technology, a joint venture.

Donald R. Brophy, Hanna, Brophy, Mac-Lean, McAleer & Jensen, San Francisco, Cal., for Reliance Ins. Co.

ORRICK, District Judge.

Plaintiff, Dennis Rooney, brought suit against the United States under the Federal Tort Claims Act (the Act), 28 U.S.C. § 1346(b), for injuries suffered as the result of his fall from a fifty-five foot radar dome (radome) owned by the government and situated on Mount Tamalpais in Mill Valley, Marin County, California. Rooney, nineteen years old at the time of the accident on October 20, 1971, was employed as a member of a crew which, pursuant to United States government contract, was to travel throughout the world painting and maintaining radomes. The United States filed a third-party complaint against the contractor, designating as defendants Contel Corporation (Contel) and Information Technology, Inc. (Infotech), a joint venture, and each corporation individually. Reliance Insurance Company, workers' compensation carrier for Contel, filed a motion to intervene in the action, which was granted by this Court on September 16, 1975.

In an opinion and order filed February 8, 1977, this Court determined that Rooney, the United States, and the independent contractor were each negligent and that the negligence of each proximately caused the accident. Specifically, the Court found that Rooney's negligence contributed thirty percent toward his injury, that the United States' negligence contributed twenty-five percent toward Rooney's injury, and that the negligence of Contel and Infotech, a joint venture, contributed forty-five percent toward Rooney's injury. Thereupon, the Court proceeded to apportion damages according to principles of comparative negligence and with reference to an indemnification agreement between the United States and the joint venture. Moreover, the Court determined the effect of the in-

surer's payment of workers' compensation on the liability of the parties and on the award to Rooney.

The apportionment of damages sparked a lively debate among the parties, who were unable to arrive at a mutually agreeable form of judgment. After considering the various proposed judgments, the Court requested that the parties brief more thoroughly each of the damages issues. The Court now determines that its prior opinion should be modified in accordance with the following opinion.

I.

■ The process of awarding damages in this action requires a federal court to assume the awkward burden of divining the course of state law in an area which has been subject to recent, significant change. At the outset, the Act, as interpreted by federal case law, directs that the law of the place of the wrong is to govern computation of damages. See 28 U.S.C. § 1346(b); *United ed States v. English*, 521 F.2d 63, 70 (9th Cir. 1975). California law, in turn, provides that:

"[p]ending future judicial or legislative developments, the trial courts of this state are to use broad discretion in seeking to assure that the principle [of comparative negligence] is applied in the interest of justice and in furtherance of the purposes and objectives * * * *"

of the state supreme court in its adoption of a system of "pure" comparative negligence. *Li v. Yellow Cab Co.*, 13 Cal.3d 804, 829, 119 Cal.Rptr. 858, 875–876, 532 P.2d 1226, 1243–1244 (1975).

The factual intricacies of the present case pose two substantial negligence problems. Rooney's employer carries workers' compensation insurance. The compensation payments received by Rooney, therefore, mark the full extent of the employer's liability to him. Rooney has, however, pursued his right to bring suit against the United States under the Act. The United States, in turn, has sued the joint venture (the independent contractor) for indemnification based on the terms of a contract between

these two parties, which provides that the joint venture will indemnify the United States to the extent that the joint venture is negligent. Finally, the employer's workers' compensation carrier has intervened, seeking reimbursement for the compensation expenditures. This Court has found that the joint venture, the plaintiff, and the United States were all negligent, and that the negligence of each caused plaintiff's accident.

The principal comparative negligence questions which must be resolved in awarding damages are: (1) whether the workers' compensation carrier for the negligent employer is entitled to reimbursement for a percentage of the compensation payments, despite the statement in *Witt v. Jackson*, 57 Cal.2d 57, 17 Cal.Rptr. 369, 366 P.2d 641 (1961), that an employer's concurrent negligence entirely precludes his right to such reimbursement; and (2) whether the liability of the United States to Rooney is limited by the fact that the United States was found only twenty-five percent negligent.

### A.

First, as to workers' compensation payments, the Court concludes that principles of comparative negligence must apply if the decision is to comport with the Act provision that the law of the place of the wrong governs. 28 U.S.C. § 1346(b). In *United States v. English, supra*, 521 F.2d at 70, the Court of Appeals for this circuit found specifically that the law of the place of the wrong determines the award of damages.

While there has been no direct determination by the California Supreme Court concerning the applicability of comparative negligence principles to workers' compensation issues, the decision in *Li v. Yellow Cab Co., supra,* 13 Cal.3d at 829, 119 Cal.Rptr. at 875–876, 532 P.2d at 1243–1244, *did* require that trial court judges in California:

" * * * use broad discretion in seeking to assure that the principle [of comparative negligence] is applied in the interest of justice and in the furtherance of the purposes and objectives set forth in this opinion."

The weight of trial court authority indicates that this discretion has been exercised to apply comparative negligence in the workers' compensation field. *See, e. g.,* Conference of California Judges, Report of Annual Meeting, *Comparative Negligence in California* (Sept. 23, 1975), at 5–6 (hereinafter cited as Judges' Panel). The judges suggested that because an intervenor for the employer is in the position of a plaintiff, its negligence should (as in the case of the plaintiff) reduce rather than bar recovery. *See also* The Committee on Standard Jury Instructions, Civil, of the Superior Court of Los Angeles County, California Jury Instructions, Civil (BAJI), 15.13–15.19 (5th rev'd ed. 1975 Supp.) (hereinafter cited as BAJI).

While there is some authority to the contrary, the better view favors reduction of the amount of the workers' compensation reimbursement by a percentage representing the *combined* negligence of the plaintiff (employee) and the employer. *See* BAJI 15.13; Judges' Panel at 6. This conclusion is bolstered by the fact that the employer's right to reimbursement is fundamentally a right of subrogation to the employee's claim. *See* Judges' Panel at 6.

Finally, while third parties favor the view that reduction by the percentage of the employee's negligence should *precede* segregation of the workers' compensation lien (*see, e. g.,* Cal. Workers' Comp. Rptr. (Nov. 1975) at 209–210), the more rational approach is to segregate the lien at the outset. *See* BAJI 15.13.

### B.

The second point requiring elaboration is whether the entire judgment for the plaintiff must be assessed against the United States. Neither the fact that the United States is only twenty-five percent negligent nor the existence of the indemnification contract requires a reduction in damages assessed against the United States.

The United States urges that state indemnity law is not controlling, citing the Supreme Court's decision in *United States*

*v. Seckinger,* 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970). The Court in *Seckinger,* however, decided only that an employer's *contract* to indemnify the United States would be *interpreted* as embodying comparative negligence principles. *Id.* at 215, 90 S.Ct. 880. Thus, the United States was entitled to indemnification for whatever payment it made to the plaintiff for which the employer was to blame (*i. e.,* only to the extent that the employer was negligent). The Court did hold that federal law controlled contract interpretation, but it in no way suggested that the initial computation of damages is properly a matter of federal law. Indeed, as discussed above, both the Act and this circuit (in *United States v. English, supra* ) require the opposite conclusion.

The United States also relies on the decision of the Fifth Circuit in *Orr v. United States,* 486 F.2d 270 (5th Cir. 1973). There, however, the court specifically looked to state law to determine the proper method of computation, but found the question an open one. (The plaintiff in *Orr* said that damages should be reduced only by the percentage of plaintiff negligence; the court found no multiple party cases on point.)

It is true that the court in *Orr* did affirm the district court's determination that the United States, which was thirty percent negligent, was liable for only thirty percent of the plaintiff's damages. Nevertheless, the holding was based on the fact that *under the circumstances* entering a judgment for any additional amount would have been "a useless act in the face of an unbroken chain of indemnity". *Id.* at 279. The plaintiff in *Orr, unlike* plaintiff here, was bound pursuant to a settlement agreement to indemnify his employer (subcontractor) for any damages traceable to the employer's negligence. In addition, the subcontractor was bound to indemnify the contractor, and the contractor was bound to indemnify the United States. Rooney, in contrast, is not bound to indemnify the employer. In short, *Orr* both indicates that a different result might obtain under different circumstances (*e. g.,* those present in this case) and suggests the propriety of consulting state law.

California law indicates that the full amount of damages is recoverable against the third-party tortfeasor (the United States). First, Section 3852 of the California Labor Code provides:

> "The claim of an employee for compensation does not affect his claim or right of action *for all damages proximately resulting from such injury or death against any person other than the employer.* Any employer who pays, or becomes obligated to pay compensation, or who pays, or becomes obligated to pay salary in lieu of compensation, may likewise make a claim or bring an action against such third person. In the latter event the employer may recover in the same suit, in addition to the total amount of compensation, damages for which he was liable including all salary, wage, pension, or other emolument paid to the employee or to his dependents." (emphasis added)

*See also* BAJI 15.13 (plaintiff's judgment against defendant determined by segregating lien from total damages and then reducing remaining amount by percentage of *plaintiff's* negligence).

The authorities cited by the United States do not require a different result. For example, in *American Motorcycle Ass'n v. Superior Court,* 65 Cal.App.3d 694, 135 Cal.Rptr. 497 (1977), the principal case cited, the Court of Appeal held:

> "*New Rule.* We thus conclude that the adoption of the rule of pure comparative negligence in *Li* abrogates the preexisting rule of joint and several liability of concurrent tortfeasors. Where the *Li* rule applies liability among concurrent tortfeasors must be apportioned according to their respective degrees of negligence with each liable to the plaintiff only for his proportion. (See Prosser, *Comparative Negligence,* 41 Cal.L.Rev. 1, 33.)"

This holding, however, is *not* determinative of the present case. First of all, the *AMA* case did not involve a workers' compensa-

tion situation. The focus of the case, in fact, was on whether or not a named defendant had the right to bring unnamed parties into the action by cross-complaint, claiming that the unnamed parties were negligent and, therefore, liable. The court's decision that "liability among concurrent tortfeasors must be apportioned according to their respective degrees of negligence with each liable to the plaintiff only for his proportion" (*Id.*) was, therefore, intimately bound up with the fact that all allegedly negligent parties could be brought before the court and could potentially be held liable. By contrast, in the workers' compensation situation, the plaintiff's rights against the employer are limited to workers' compensation payments. Indeed, it has been noted that "there never can be a joint judgment against [the negligent employer and the third party] because compensation proceedings is the sole remedy against one of them". *Mize v. Atchison, Topeka & Santa Fe Ry.,* 46 Cal.App.3d 436, 459, 120 Cal.Rptr. 787, 802 (1975), citing *Chick v. Superior Court,* 209 Cal.App.2d 201, 25 Cal.Rptr. 725 (1962); *see Pylon, Inc. v. Olympic Insurance Co.,* 271 Cal.App.2d 643, 650, 77 Cal.Rptr. 72, 77 (1969) (Cal.Code Civ.P. § 875, governing contribution among joint tortfeasors, inapplicable). Similarly, it has recently been stated that "[a]s a condition to contribution there must be a money judgment rendered jointly against two or more defendants." *Sanders v. Atchison, Topeka & Santa Fe Ry.,* 65 Cal. App.3d 630, 638, 135 Cal.Rptr. 555, 559 (1977).

In addition, this Court must take into account the existence of the explicit indemnification clause in the contract between the joint venture and the United States. Were the United States liable for only that percentage of damages which corresponded with its percentage of negligence (twenty-five percent), the contractual provision would be meaningless, as the employer would never be required to honor the indemnification agreement (at least, absent a most strained reading of the clause by which the employer in the present situation would be liable for forty-five percent of the twenty-five percent).

Plaintiff notes that the court in *Sanders* observed the frequent recognition by courts that "indemnity is distinguishable from any liability imposed on the basis of comparative negligence * * *". *Id.,* 65 Cal. App.3d at 640, 135 Cal.Rptr. at 561. This statement must not be read out of context. The court in *Sanders* addressed only the issue of *implied* indemnity, whereby the entire loss is shifted from one party to another. *Id.,* 65 Cal.App.3d at 637, 135 Cal. Rptr. at 558. In the workers' compensation context, however, the employer is liable to indemnify the third party *only* if the two parties have, as in the present case, expressly contracted to do so. Cal.Lab.Code § 3864; *Pacific Gas & Electric Co. v. Morse,* 6 Cal.App.3d 707, 711, 86 Cal.Rptr. 7, 8 (1970); *Corley v. WCAB,* 22 Cal.App.3d 447, 454 n. 4, 99 Cal.Rptr. 242, 246 n. 4 (1972). In the present case, comparative negligence principles are applied to the contract *by its terms.* Cf. *United States v. Seckinger, supra.* As stated above, it is this contractual provision for comparative negligence which requires logically that the judgment against the United States be for the entire amount of Rooney's damages.

## II.

In the light of the foregoing determination, the Court finds the amount of damages and the manner in which damages are to be apportioned as follows:

| | |
|---|---|
| Lost Income (as originally determined) | $500,000.00 |
| Less Offset Income (as originally determined) | 189,492.00 |
| Net Lost Income (as originally determined) | $310,508.00 |
| Add Future Medical Costs (as originally determined) | 60,000.00 |
| Add General Damages (as originally determined) | 250,000.00 |
| Add Past Medical Costs (newly added) | 174,938.33 |
| TOTAL | $795,446.33 |
| Less Workers' Compensation Payments (medical payments $174,938.33; temporary disability $6,406.40; permanent disability $8,767.50) | 190,112.23 $605,334.10 |

The disability amounts are not listed as separate items of damages because such damages were determined in the computation of net lost income. The amount expended by the workers' compensation carrier as medical costs *is* included, as it is not part of the "general damages" sum.

Based on these sums, the Court concludes that damages should be awarded as follows:

## A.

■ *Plaintiff's Judgment Against the United States.* The total amount of damages is $795,446.33. From this sum the amount of the workers' compensation lien, $190,112.23, is deducted, yielding $605,334.10. This amount is further reduced by thirty percent, $181,600.23, the percentage of plaintiff Rooney's negligence. Plaintiff's judgment against defendant United States is $423,733.87.

## B.

■ *Reliance Insurance Company's Judgment Against the United States.* The total amount of workers' compensation payments is $190,112.23. This amount, reduced by the combined percentage of plaintiff's negligence (thirty percent) and the employer's negligence (forty-five percent), $142,584.17, results in a net figure of $47,528.06. This amount, $47,528.06, constitutes the total liability of the United States to the insurance carrier-intervenor.

## C.

■ *United States' Claim Against the Joint Venture.* By the terms of the contract between the United States and the joint venture, the joint venture is to indemnify the United States to the extent that the joint venture is negligent (forty-five percent). Thus, the joint venture is liable to the United States for $^{45}/_{70}$ of $423,733.87, or $272,400.35.[1]

## III.

■ One final matter remains unresolved. Plaintiff requests that Reliance Insurance Company be required to pay an attorneys' fee to plaintiff pursuant to Section 3856(c)(d) of the California Labor Code. This demand is apparently grounded on the assertion that "an active litigant [plaintiff Rooney] may require the passive beneficiary of his efforts [here the insurance carrier] to contribute toward the payment for the services of litigant's attorney which produced the recovery" in which the carrier partakes. *See Quinn v. California,* 15 Cal.3d 162, 165, 124 Cal.Rptr. 1, 3, 539 P.2d 761, 763 (1975). The court in *Quinn* specifically stated, however, that "[o]nly when each party separately employs his own attorney does [§ 3856] direct the court to relinquish [the] duty of equitable apportionment * * *". *Id.* 15 Cal.3d at 176 n. 19, 124 Cal.Rptr. at 10 n. 19, 539 P.2d at 770 n. 19. This statement appears to preclude the necessity for Reliance Insurance Company to contribute to plaintiff's attorneys' fees.

In the interests of both clarity and expediency, and because the parties have offered no substantial opposition, plaintiff Rooney shall, as he has requested, provide for his verdict to be declared a judgment separate from those of plaintiff in intervention, Reliance Insurance Company, and third-party plaintiff, United States.

1. The United States brought suit against the joint venture and each of the two corporations which formed it (Contel Corporation and Information Technology, Inc). This Court's finding that the proper contracting party was the joint venture precludes a judgment against the separate corporations forming the venture. Nevertheless, it is a matter of hornbook law that "[e]xcept in minor details, the law of partnership is applied to joint ventures * * *". N. Lattin, *Lattin on Corporations* (2d ed. 1971) at 9.

Equally well-recognized is the theory that "as to third persons dealing with the partnership or those tortiously injured by acts of the partners done within the scope of the partnership business, such persons are protected and all partners are unlimitedly liable". *Id.* at 12. Thus, each of the corporations forming the joint venture could be held liable for the judgment against the joint venture.

Plaintiff shall prepare and lodge with this Court forms of judgments approved as to form by all parties on or before May 20, 1977.