[No. A090292. First Dist., Div. Four. Apr. 16, 2001.]

MICHELLE HUGHES, Plaintiff and Appellant, v.
ARGONAUT INSURANCE COMPANY, Defendant and Respondent.

518

520

## COUNSEL

Charles Schwartz and Russell Davis for Plaintiff and Appellant.

Sonnenschein Nath & Rosenthal, John Leland Williams and Virginia Young for Defendant and Respondent.

Crosby, Heafey, Roach & May, Joseph P. Mascovich, Kenneth M. Seeger and Adam R. Salvas for National Association of Independent Insurers as Amicus Curiae on behalf of Defendant and Respondent.

## OPINION

**REARDON, Acting P. J.**—The doctrine of workers' compensation exclusivity is a frequent subject of judicial tweaking. Like the law of search and seizure, the variety of fact patterns seems never ending, and each variation presents yet another opportunity for judicial review. This time we examine whether a claimant may sue her employer's insurance carrier in superior court for what amounts to the insurer's purported mishandling of its lien on the claimant's settlement with a third party tortfeasor. We conclude she may not and accordingly affirm the judgment of dismissal.

## I.  BACKGROUND

■ As this appeal comes to us from a judgment of dismissal following the sustaining of a demurrer without leave to amend, we accept the material allegations of the complaint as true. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317].) The third amended complaint of appellant Michelle Hughes reveals the following: Hughes was an employee of Southern Auto Supply. Respondent Argonaut Insurance Company (Argonaut) provided workers' compensation insurance to the employer. On December 8, 1997, while on the job, Hughes was in an automobile accident with a third party. Argonaut paid Hughes workers' compensation benefits in the amount of $5,324.07.

Thereafter, Hughes pursued a personal injury claim against the third party; she did not sue. The parties settled for the sum of $12,104.75.

Argonaut asserted a lien against the settlement; the settlement check was endorsed to Hughes, Argonaut and Hughes's attorney. Hughes tendered $3,549.38 to Argonaut, representing the full value of the insurer's workers' compensation lien ($5,324.07) reduced by one-third withheld for attorney fees.

Argonaut refused the tender, insisting on its right to collect the lien in full. Hughes offered to place the disputed difference ($1,774.67) in escrow, pending resolution of the matter. Argonaut refused.

Argonaut's refusal to negotiate the check led to litigation, with Hughes asserting causes of action for insurance bad faith, intentional interference with contractual relations, interference with prospective economic advantage, wrongful assertion of lien and declaratory and injunctive relief. In her representative capacity Hughes also challenged Argonaut's practices on behalf of the general public, asserting violations of California's unfair competition law (UCL). (Bus. & Prof. Code, § 17200 et seq.)

After initiation of the lawsuit, Argonaut agreed to distribute the settlement funds, while holding the disputed $1,774.67 in a trust account.

The trial court sustained Argonaut's demurrer without leave to amend, ruling that it did "not have subject matter jurisdiction" over Hughes's complaint, and that such jurisdiction resided exclusively with the Workers' Compensation Appeals Board (WCAB). This appeal followed.

## II. DISCUSSION

This case presents the central question: Which tribunal has jurisdiction to decide the dispute over allocation of attorney fees incurred in reaching settlement with a third party—the WCAB or the superior court? Hughes has staged a lineup of arguments against WCAB jurisdiction; not one can overcome the hurdles of sections 3860 and 5300 of the Labor Code.[1]

### A. *Statutory Framework*

Article XIV, section 4 of the California Constitution vests the Legislature with "plenary power . . . to create, and enforce a complete system of workers' compensation, by appropriate legislation . . . ." Pursuant to this

---

[1]All statutory references are to the Labor Code.

authority, the Legislature promulgated a complete statutory scheme governing compensation to employees for injuries sustained in the course and scope of their employment. (§ 3201 et seq., or Workers' Compensation Act (WCA).)

An employer's liability for compensation under the WCA is "in lieu of any other liability whatsoever to any person" and exists for "any injury sustained by his or her employees arising out of and in the course of the employment . . . in those cases where the . . . conditions of compensation concur . . . ."[2] (§ 3600, subd. (a).) When the conditions of compensation concur, "the right to recover such compensation is . . . the sole and exclusive remedy of the employee . . . against the employer." (§ 3602, subd. (a).) The veil of protection cloaking employers by virtue of this exclusivity policy extends to workers' compensation insurance carriers as well. (§ 3850, subd. (b).)

Although the employee is limited to workers' compensation benefits from his or her employer, when the work-related injury is caused by a stranger to the employment relationship, the employee may also recover personal injury damages from the third party. (§ 3852; *Summers v. Newman* (1999) 20 Cal.4th 1021, 1023-1024 [86 Cal.Rptr.2d 303, 978 P.2d 1225].) However, to foreclose a double recovery while also enabling the employer to shift its financial burden for compensation benefits to the responsible third party, the WCA affords employers subrogation rights against third party tortfeasors. (*Quinn v. State of California* (1975) 15 Cal.3d 162, 166-167 [124 Cal.Rptr. 1, 539 P.2d 761]; see *Sea-Land Service, Inc. v. Workers' Comp. Appeals Bd.* (1996) 14 Cal.4th 76, 82 [58 Cal.Rptr.2d 190, 925 P.2d 1309].) Thus, an employer has a right of reimbursement for workers' compensation benefits it has paid or become obligated to pay when its employee recoups damages from a third party tortfeasor by way of judgment or settlement. (§§ 3856, 3860.) Additionally, the employer may redeem its outlay for benefits by suing the tortfeasor directly (§§ 3852, 3854), or by joining an action brought by the employee (§ 3853).

In turn, upon payment of benefits for injuries caused by a third party, the workers' compensation insurer can also recoup its expenditures by suing the third party; intervening in the employee's suit; or asserting a lien on any recovery the employee obtains from the third party. (§§ 3850, subd. (b),

---

[2]Those include the following pertinent conditions: "(1) Where, at the time of the injury, both the employer and the employee are subject to the compensation provisions of this division. [¶] (2) Where, at the time of the injury, the employee is performing service growing out of and incidental to his or her employment and is acting within the course of his or her employment. [¶] (3) Where the injury is proximately caused by the employment, either with or without negligence." (§ 3600, subd. (a)(1)-(3).)

3852, 3856, subd. (b); *New Plumbing Contractors, Inc. v. Nationwide Mutual Ins. Co.* (1992) 7 Cal.App.4th 1088, 1093 [9 Cal.Rptr.2d 469].)

The availability of statutory subrogation rights spawns rival claims to the common fund of damages secured from the third party. Now the interests of employers, insurers and attorneys whose efforts aid judgment or settlement compete against the interest of the injured employee in maximizing his or her recovery. Section 3860 and its companion, section 3856, set forth the priorities for distributing funds obtained through settlement with the third party tortfeasor (§ 3860) or by way of judgment (§ 3856).[3] When settlement is effected, with or without suit, proceeds from the recovery are to be used first to pay costs of settlement, including reasonable attorney fees; second, to refund the employer's reimbursable compensation costs; and finally any balance to the employee. (§ 3860; *Summers v. Newman, supra,* 20 Cal.4th at pp. 1027-1028.)

Where, as is alleged here, settlement is prompted solely through the labors of the employee's attorney, then the settlement costs,[4] including reasonable attorney fees, are deducted from the amount of settlement prior to reimbursing the employer. (§ 3860, subd. (c).) Because the employer is a passive beneficiary in this situation, its reimbursement rights are subject to reasonable fees and expenses for the services that created the common fund. (*Quinn v. State of California, supra,* 15 Cal.3d at p. 176; *Gapusan v. Jay, supra,* 66 Cal.App.4th at pp. 744-745.)

The statutory priority scheme also addresses who determines the amount of expenses and attorney fees. These amounts "shall, on settlement of suit, or on any settlement requiring court approval, be set by the court. *In all other cases these amounts shall be set by the appeals board.*" (§ 3860, subd. (f), italics added.)

Our Supreme Court has explained how the fee-setting process works under the analogous situation detailed in section 3856 when an action against a third party tortfeasor is prosecuted successfully to judgment by the employee's attorney alone. Under such circumstances the employer must bear its fair share of attorney fees. (*Quinn v. State of California, supra,* 15

---

[3]These two statutes treat apportionment of attorney fees and other litigation costs in an identical manner. Thus, opinions involving section 3856 are applicable to section 3860 cases. (*Quinn v. State of California, supra,* 15 Cal.3d at p. 176, fn. 20; *Gapusan v. Jay* (1998) 66 Cal.App.4th 734, 744, fn. 9 [78 Cal.Rptr.2d 250].)

[4]These costs are described more particularly as "the reasonable expenses incurred in effecting such settlement, including costs of suit, if any, together with a reasonable attorney's fee to be paid to the employee's attorney, for his services in securing and effecting settlement for the benefit of both the employer and the employee." (§ 3860, subd. (c).)

Cal.3d at p. 166.) The court's job is to first calculate a reasonable fee, and then having fixed that fee, to "make a reasonable apportionment of it between the parties benefitted by the recovery." (*Id.* at p. 175, fn. omitted.)

Against this background, we treat Hughes's contentions on appeal.

B. ·*Section 3860 Accords the WCAB Exclusive Jurisdiction over Hughes's Claim*

The core activity upon which all causes of action hinge is Argonaut's purportedly wrongful assertion of the full value of its lien, in derogation of the section 3860 duty to apportion attorney fees. That statute situates jurisdiction to determine the reasonable amount of attorney fees to be deducted from Hughes's settlement with the WCAB. Where settlement occurs after suit is filed, or if the settlement requires court approval, the court sets the amount of litigation expenses and attorney fees. Otherwise, the WCAB will make these decisions. (§ 3860, subd. (f); *Summers v. Newman, supra,* 20 Cal.4th at p. 1027.) Hughes did not sue the third party, nor does the complaint suggest that the settlement required court approval. Therefore, the WCAB, not the superior court, decides the amount and allocation of fees to be paid to Hughes's attorney.

Yet, Hughes asserts that her dispute with Argonaut was about shady lien practices, not compensation, and since there was no ongoing workers' compensation claim, the conditions essential to liability for compensation benefits enumerated in section 3600 did not exist. Therefore, she concludes there was "nothing" to which WCAB jurisdiction can attach.

This attempt to transform the conditions essential to liability for compensation into conditions essential to WCAB jurisdiction proceeds from credulity, not authority. Section 3600 has nothing to do with WCAB jurisdiction. It does not even mention the term jurisdiction, let alone the WCAB or any other tribunal. Instead, the jurisdictional parameters of the WCAB are laid out in section 5300, which mandates that certain enumerated proceedings "shall be instituted before the appeals board and not elsewhere . . . ." These include proceedings "[f]or the recovery of compensation, *or concerning any right or liability arising out of or incidental thereto.*" (§ 5300, subd. (a), italics added.)

The terms of section 3860, subdivision (f) belie Hughes's proposition that the conditions of jurisdiction do not exist. Vesting the WCAB with exclusive authority to set and allocate fees in all cases resulting in settlement on a nonlitigated claim (except where the settlement *requires* court approval), this

statute applies on all fours to the case at hand. The only conditions essential to exercise of the WCAB's section 3860 jurisdiction is the settlement of a nonlitigated claim against a third party that includes the employee's claim, as well as the employer's or carrier's subrogated claim against the tortfeasor. All conditions are present here. Committing jurisdiction to the WCAB in such circumstances makes common and consummate sense and advances the public policy "to repose in the WCAB as much as possible resolution of problems and alleged claims arising out of worker's compensation matters." (*Fremont Indemnity Co. v. Superior Court* (1982) 133 Cal.App.3d 879, 881 [184 Cal.Rptr. 184].) Why enmesh the civil courts in determining reasonable attorney fees for the mutual benefit conferred on employer and employee when they have had no connection to or involvement with the settled claim?

## C. *Section 3860 Does Not Conflict with Section 3751*

■ Hughes further contends that construing section 3860 to confer jurisdiction on the WCAB to set and allocate attorney fees runs afoul of section 3751. That statute makes it a misdemeanor for an employer to "exact or receive from any employee any contribution, or make or take any deduction from the earnings of any employee, either directly or indirectly, to cover the whole or any part of the cost of compensation . . . ." (§ 3751, subd. (a).) As near as we can discern, Hughes reasons as follows: She entered into a "standard" one-third contingent fee agreement with her attorney. If the WCAB decides that the reasonable fee to be deducted from Argonaut's share of the settlement is *less than* one third, then she will end up absorbing part of the cost of her workers' compensation benefits.

Hughes labors under the misguided assumption that she can determine the issue of a reasonable attorney fee and Argonaut's share thereof. Section 3860, subdivision (f) assigns that task to the WCAB or the court as the case may be, not the employee. Hughes's private agreement with her attorney cannot and does not abrogate the WCAB's authority in this case to calculate reasonable attorney fees and charge Argonaut with its fair share.

We are mindful that the cost of recovering a judgment or settlement may accurately be characterized as " 'part of the cost of compensation.' " (*Summers v. Newman, supra*, 20 Cal.4th at p. 1032.) However, what section 3751 forbids is shifting the employer's fair share of attorney fees to the employee. Where instead employer and employee equitably share such expenses according to the benefit derived by each, there is no conflict between the two provisions. (See *id.* at pp. 1032-1033, 1035 [where employee and employer have separate attorneys whose efforts jointly contributed to a settlement, the employer's fair share of attorney fees is deducted from its reimbursable compensation costs].)

### D. *Argonaut Is Not Estopped from Asserting the WCAB's Jurisdiction*

█ Hughes also maintains that Argonaut is estopped from asserting the WCAB's jurisdiction. She points to the fact that Argonaut filed a civil action against the third party tortfeasor *after* the third party issued its settlement check payable to Hughes, her attorney and Argonaut, notwithstanding that the check was purportedly sufficient to pay all potential claimants.[5] She accuses Argonaut of "knowingly and voluntarily" availing itself of the civil justice system when it knew the settlement would cover its lien, "even though Argonaut could have filed an application for adjudication of claim with the WCAB [if it really believed that the WAB had exclusive jurisdiction over the apportionment issue]." From this Hughes concludes that Argonaut "waived, or is estopped to urge, objection to the jurisdiction which it invited the superior court to exercise."

Hughes's reasoning is illogical. First, Argonaut sued the third party *for damages.* The WCAB has no jurisdiction over such a claim, any more than it would over a third party claim prosecuted by the employee. On the other hand, jurisdiction over the present dispute concerning apportionment of attorney fees does repose in the WCAB.

Second, an insurer may sue the third party directly and also apply for reimbursement from the employee's recovery against the third party. (*Pac. Emp. Ins. Co. v. Hartford etc. Ins. Co.* (1956) 143 Cal.App.2d 646, 649 [299 P.2d 928].) Satisfaction of the insurer's lien from the employee's judgment or settlement would simply diminish the insurer's claim against the third party. (*Id.* at pp. 648-649.)

Third and more fundamentally, what we are talking about here is subject matter jurisdiction. The only point of jurisdictional concurrency between the WCAB and civil courts is jurisdiction to determine jurisdiction. Once determined, jurisdiction is exclusive, not concurrent, and civil courts have no power to grant relief in matters concerning the workers' compensation remedy. (See *Scott v. Industrial Acc. Com.* (1956) 46 Cal.2d 76, 82-83 [293 P.2d 18].) Finally, subject matter jurisdiction cannot be conferred by waiver, consent or estoppel upon a tribunal otherwise lacking such jurisdiction. (*Summers v. Superior Court* (1959) 53 Cal.2d 295, 298 [1 Cal.Rptr. 324, 347 P.2d 668].)

### E. *Section 5300 Vests Exclusive Jurisdiction in the WCAB over This Dispute*

█ Irrespective of section 3860, the WCAB is the exclusive forum for resolving employee claims arising out of or incidental to payment of

---

[5]Argonaut subsequently dismissed the action.

workers' compensation benefits. The WCA sets out an elaborate and complete scheme for adjudicating claims of employees against employers and their insurers. Its underlying purpose is to facilitate a quick, simple and accessible process for claiming and receiving compensation. (*Santiago v. Employee Benefits Services* (1985) 168 Cal.App.3d 898, 901 [214 Cal.Rptr. 679].) In keeping with this purpose, proceedings which in any manner concern the recovery of compensation or any right or liability "arising out of or incidental thereto" must be instituted before the WCAB. (§ 5300, subd. (a).) Section 5300 and its exclusive jurisdiction provisions thus play an essential role in the exclusivity scheme. (See *Marsh & McLennan, Inc. v. Superior Court* (1989) 49 Cal.3d 1, 7-8 [259 Cal.Rptr. 733, 774 P.2d 762].)

Our Supreme Court has recently clarified and refined the analysis courts must engage in when determining the sweep of the exclusivity doctrine. (*Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund* (2001) 24 Cal.4th 800 [102 Cal.Rptr.2d 562, 14 P.3d 234] (*Vacanti*).) The question considered in *Vacanti* was whether the exclusive remedy provisions of the WCA preempted statutory and tort claims asserted by medical providers. The providers alleged that the insurers conspired to put them out of business by intentionally mishandling their lien claims; they sought only to recover damages to their businesses. ■ Discerning which causes of action filtered through the exclusivity barrier, our state's high court articulated a two-part inquiry: First, is the alleged injury " 'collateral to or derivative of' an injury compensable by the exclusive remedies of the WCA . . . ."? (*Id.* at p. 811.) Injuries that arise out of and in the course of the workers' compensation claims process come within the exclusivity rules "because this process is tethered to a compensable injury." (*Id.* at p. 815.)

Second, if the injury meets the "collateral to or derivative of" test, then courts examine "whether the alleged acts or motives that establish the elements of the cause of action fall outside the risks encompassed within the compensation bargain. . . . [Citation.] Where the acts are 'a "normal" part of the employment relationship' [citation], or workers' compensation claims process [citation], or where the motive behind these acts does not violate a 'fundamental policy of this state' [citation], then the cause of action is barred." (*Vacanti, supra,* 24 Cal.4th at pp. 811-812.) In conducting this analysis, the proper focus is on the purpose or reason informing the acts, not the intentional or negligent nature of the conduct. Thus, courts should disregard any purported intent beyond the intent to do the acts themselves. (*Id.* at pp. 820-821.)

Relating this test to the providers' claims, the court held that causes of action to recover economic damage to the plaintiffs' businesses due to

failure of the defendant insurers to make timely and full payment on their lien claims were part and parcel of the compensation bargain and thus were not shielded from preemption to the extent such causes arose from the defendants' alleged mishandling of the lien claims. Such claims were subject to the exclusivity provisions notwithstanding that certain misdeeds might constitute regulatory crimes. Moreover, none of the individual misdeeds violated the employee's reasonable expectations or any fundamental public policy. (*Vacanti, supra,* 24 Cal.4th at pp. 823-824, 827.)

However, the exclusivity of remedy doctrine did not preempt the Cartwright Act claim. In addition to the mishandling of lien claims, this cause relied on concerted efforts by insurers to interject themselves into lien claims *they did not insure.* Such concerted activity is not a normal part of the claims process. (*Vacanti, supra,* 24 Cal.4th at pp. 825-826.) So, too, claims of alleged RICO (Racketeer Influenced and Corrupt Organizations Act) violations survived the exclusivity challenge. Predicated on a pattern of racketeering activity embracing organized and systemic criminal conduct, by definition RICO claims are never closely connected to normal insurer activity. (*Id.* at pp. 826-827.) Finally, claims of tortious interference with business relations and violations of the UCL likewise were shielded from the exclusivity provisions to the extent they were predicated on conspiratorial acts. But to the extent they entailed individual misdeeds of each defendant, they were barred. (*Id.* at pp. 827-828.)

█ *Vacanti* disposes of Hughes's complaint.

First, the alleged injuries are "collateral to or derivative of" a compensable injury. According to the complaint, the injury to Hughes was failure to reap the proceeds of the third party settlement. As well, the gravity of harm to Hughes and the general public from the alleged unfair practice of failing to apportion attorney fees was "measured by the unapportioned attorney fees."

Hughes insists that "to be considered collateral or derivative within the WCA, a claim . . . must itself concern personal injury or death." Not so. Compensable injuries include those that arise out of and in the course of the workers' compensation claims process. (*Vacanti, supra,* 24 Cal.4th at p. 815.) The settlement process at issue here is collateral to or derivative of the claims process. The damage to Hughes resulted from Argonaut's purported misconduct in asserting a right to full reimbursement, undiminished by its fair share of attorney fees. The right to reimbursement, whether correctly or wrongly asserted, nevertheless derives from statute and existed only because Argonaut paid workers' compensation benefits to Hughes.

Further, the perfecting of reimbursement rights is a fairly typical, routine activity for a compensation carrier where, as here, a. third party is responsible for the injury. Thus the activity is but an extension of the benefits claim process itself. Moreover, the WCAB is the most appropriate, and best positioned, forum to inquire into the reasons for the particular lien practices, whether intentional or not and whether excusable or not, and where necessary to impose discipline. (See *Marsh & McLennan, Inc. v. Superior Court, supra,* 49 Cal.3d at p. 7.)

Second, Argonaut's conduct did not did transcend the normal role of an insurer within the overall workers' compensation scheme. ▉ The compensation bargain itself "anticipates that an insurer may commit various misdeeds during the claims process, including some criminal acts." (*Vacanti, supra,* 24 Cal.4th at p. 827.) Thus, an employee may maintain a private cause of action against the insurer only when the insurer commits wrongful acts that are independent of its role as insurer of workers' compensation benefits. (*Id.* at p. 822.) But the threshold of misconduct is high: It must be " 'so extreme and outrageous' " that the carrier in effect steps outside the role of insurer.[6] (*Id.* at p. 820.)

▉ Here, Argonaut's efforts did not exhibit any motive violative of a fundamental public policy. At worst Argonaut demonstrated bad faith in refusing to accede to Hughes's fee demand. "The mere fact that an individual insurer has a pattern or practice of bad faith delays or denials of payment is not enough to insulate a cause of action from preemption where, as here, each wrongful act is closely connected to a normal insurer activity . . . ." (*Vacanti, supra,* 24 Cal.4th at p. 828.) Additionally, neither does the unfair business practices claim require a motive that violates a fundamental public policy. The UCL focuses solely on *conduct,* prohibiting anything amounting to a business practice that at the same time is forbidden by law. To state a claim under the UCL, the litigant need not prove elements of a tort; all that is required is to show that the public is likely to be deceived. (*Id.* at p. 827.)

---

[6]This aspect of the *Vacanti* test derives from the narrow exception to WCAB's exclusive jurisdiction first articulated in *Unruh v. Truck Insurance Exchange* (1972) 7 Cal.3d 616 [102 Cal.Rptr. 815, 498 P.2d 1063]. There the insurer's zealous agent took claims investigation beyond the pale: He inveigled claimant into undertaking activities beyond her normal physical capabilities in order to capture claimant's movements on film for subsequent viewing in workers' compensation proceedings. Claimant suffered a physical and mental breakdown when learning of the insurer's ruse. (*Id.* at p. 621.) Claimant was allowed to proceed in court against the insurer because the misconduct was so egregious that the insurer was held to have abandoned its role as insurer. (*Id.* at pp. 627, 630-631; see also *Marsh & McLennan, Inc. v. Superior Court, supra,* 49 Cal.3d at p. 6.)

Hughes also argues that the WCAB does not have jurisdiction over UCL actions because those actions are in equity[7] and the WCAB does not have "general powers of equity." This argument misses the mark.

The theory of relief asserted by an employee is irrelevant to the WCAB's exclusive jurisdiction over disputes between employees and employers or insurers. Remedies available to employees are limited for the very reason that by abandoning the wider range of damages and relief available in civil court, employees gain the certainty of payment without regard to fault. An employee cannot hide from the sweep of WCAB jurisdiction merely by alleging that an insurer's conduct violates the UCL or is otherwise tortious. There is no "equitable claim" exception to the WCAB's exclusive jurisdiction. In fact, we resolve all reasonable doubts about WCAB jurisdiction in favor of jurisdiction. (*Mitchell v. Scott Wetzel Services, Inc.* (1991) 227 Cal.App.3d 1474, 1480 [278 Cal.Rptr. 474].)

### III. DISPOSITION

The WCAB has exclusive jurisdiction over all of Hughes's claims against Argonaut. Accordingly, we affirm the judgment of dismissal.

Kay, J., and Chiantelli, J.,* concurred.

---

[7]*Kraus v. Trinity Management Services, Inc.* (2000) 23 Cal.4th 116, 138 [96 Cal.Rptr.2d 485, 999 P.2d 718].

*Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.