People of the State of CALIFORNIA EX REL. TIG INSURANCE COMPANY, as successor by merger to Fairmont Premier Insurance Company, Plaintiff,

v.

Brad CULPEPPER and Does One Through One Hundred, inclusive, Defendants.

Case No.: SACV 16–01555–CJC(JCGx)

United States District Court, C.D. California, Southern Division.

Signed 10/13/2016

Thomas E. Fraysse, Maisie Sokolove, Knox Ricksen, LLP, Oakland, CA, Eric J. Danowitz, Knox Ricksen, LLP, Los Angeles, CA, for Plaintiff.

Daniel Michael Crowley, Steven M. Mitchel, Booth Mitchel and Strange, LLP, Los Angeles, CA, for Defendants.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

CORMAC J. CARNEY, UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

Plaintiff TIG Insurance Company ("TIG"), successor by merger to Fairmont Premier Insurance Company ("Fairmont"), brings this *qui tam* action on behalf of the People of the State of California against Defendants Brad Culpepper and Does 1 through 100, inclusive, for violations of the California Insurance Frauds Prevention Act ("CIFPA"), California Insurance Code

§ 1871.7(b). (Dkt. 1 Ex. A ["Compl."].) Before the Court is Culpepper's motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). (Dkt. 11 ["Mot."].) For the following reasons, the motion is GRANTED.[1]

## II. BACKGROUND

On November 2, 2010, Brad Culpepper filed a claim for workers' compensation benefits against the Chicago Bears before the Workers' Compensation Appeals Board ("WCAB") in Santa Ana, California. (Compl. ¶ 30.) Culpepper claimed to have suffered "cumulative injury" to his entire body while employed as a professional football player under the National Football League ("NFL") ten years earlier. (Dkt. 12 ["Opp."] at 2; Compl. ¶¶ 30, 33.) The claim was based on six games he had played in California. (Compl. ¶ 29.) Fairmont, the workers' compensation insurer for the Chicago Bears, hired Qualified Medical Evaluators ("QMEs") to interview Culpepper and investigate his claims. (Opp. at 2; Compl. ¶ 9.) The QMEs reported "a permanent disability rating under the California Permanent Disability Rating System of between 67 and 89%." (Compl. ¶ 10.) The parties settled the claim in September 2011; Fairmont agreed to pay Culpepper $175,000. (Id. ¶ 11.) On September 21, 2011, WCAB Administrative Law Judge Vincenti A. Blas signed an Order Approving Compromise and Release ("OACR") accepting the settlement. (Dkt. 11-4 ["Mot. Ex. C"].)

According to the Complaint, Culpepper "knowingly made numerous oral and written statements that were false or misleading and/or concealed important informa-

tion" during the QMEs' investigation. (Compl. ¶ 9.) During the pendency of the claim and "just months after seeing the QMEs," Culpepper applied to be a contestant on the reality television show "The Amazing Race" and in his application represented that he was in excellent health. (Id. ¶ 12.) "Before, during and after the workers' compensation claim, Culpepper regularly engaged in running activities, 'cardio' kickboxing, and 'P90X' type workouts. He also engaged in competitive activities, including competitive racing." (Id. ¶ 13.) Two months after the settlement, Culpepper ran a 9.32 mile road race in one hour and eight minutes. (Id. ¶ 14.) Two months after that, he was awarded a black belt in kickboxing. (Id. ¶ 15.) Eighteen months after the settlement, he became a contestant on the reality television show "Survivor" and again represented that he was in excellent health in his application videos. (Id. ¶ 16.) When the show aired, it "featured Culpepper engaging in multiple physical activities that were inconsistent with the written and oral statements made to the QMEs during the course of his workers' compensation claim." (Id. ¶ 17.)

When Fairmont learned that Culpepper was a contestant on "Survivor," it began another investigation. (Id. ¶ 18.) It discovered evidence of Culpepper's kickboxing workouts, including his "Survivor" audition videos on YouTube, wherein he engaged in kickboxing activities inconsistent with representations he made in connection with his workers' compensation claim. (Id.) One of the QMEs involved in his original claim reviewed the newly discovered evidence and concluded that Culpepper "remains very fit and conditioned, undoubtedly, at least three standard deviations above the

---

1. Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. See Fed. R. Civ. P. 78; Local Rule 7-

15. Accordingly, the hearing set for October 17, 2016, at 1:30 p.m. is hereby vacated and off calendar.

norm for American males in his age group.... The only rational conclusion possible from this new information is that Mr. Culpepper has neither objective disability nor Whole Person Impairment for any body part related to his career in the NFL." (*Id.*)

Based on this evidence, on July 15, 2014, Fairmont filed a complaint in state court for fraud against Culpepper in connection with the settlement. (Opp. at 4–5.) Culpepper moved to dismiss the case pursuant to California Labor Code Section 5901, which provides,

> No cause of action arising out of any final order, decision or award made and filed by the appeals board or a workers' compensation judge shall accrue in any court to any person until and unless the appeals board on its own motion sets aside the final order, decision, or award and removes the proceeding to itself or if the person files a petition for reconsideration, and the reconsideration is granted or denied. Nothing herein contained shall prevent the enforcement of any final order, decision, or award, in the manner provided in this division.

Culpepper argued that Fairmont was required to seek WCAB reconsideration of the settlement before bringing this cause of action because the fraud claims "arose out of" the settlement. (Opp. at 5.) Judge Randall J. Sherman agreed because "the

compromise and release of workers' compensation liability, approved by the Workmen's Compensation Appeals Board, is a judgment, with the same force and effect as an award made after a full hearing" and dismissed the case on September 25, 2015. (Dkt. 11–5 ["Mot. Ex. D"].)

■ Fairmont did not seek reconsideration of the OACR before the WCAB, however. (Opp. at 6.) Instead, it filed the instant *qui tam* action in Orange County Superior Court on December 21, 2015, under CIFPA Section 1871.7(b). (Compl.) Culpepper removed the action to this Court on August 23, 2016, on the basis of diversity jurisdiction. (Dkt. 1.) Culpepper now seeks to dismiss the case for lack of subject matter jurisdiction, contending that California Labor Code Section 5901 bars this suit because TIG (Fairmont's successor) has not sought reconsideration of the OACR, and TIG has therefore failed to exhaust its administrative remedies.[2] (Mot. at 3–5.)

## III. DISCUSSION

■ The main issue is whether this suit is one "arising under" the OACR under Labor Code Section 5901, which would require TIG to seek reconsideration of the final order before the WCAB prior to bringing this action. The parties have not provided, and the Court has not found, any legal authority concerning Labor Code

---

2. Federal Rule of Civil Procedure 12(b)(1) is the appropriate vehicle for Culpepper's motion to dismiss. A "statute requiring exhaustion of administrative remedies may be jurisdictional if it is 'more than a codified requirement of administrative exhaustion' and contains 'sweeping and direct' statutory language that goes beyond a requirement that only exhausted claims be brought." *Anderson v. Babbitt*, 230 F.3d 1158, 1162 (9th Cir. 2000) (quoting *Rumbles v. Hill*, 182 F.3d 1064, 1067 (9th Cir.1999)); *see also Weinberger v. Salfi*, 422 U.S. 749, 789, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975).

Here, Labor Code Section 5901 specifically provides that no cause of action shall *accrue* unless the WCAB sets a side a final order or grants reconsideration. Cal. Lab. Code § 5901. Therefore, Section 5901 is jurisdictional and not merely a codified requirement that the parties exhaust their remedies. Since the Court finds that Culpepper's motion is properly brought and must be granted pursuant to Rule 12(b)(1), it need not consider TIG's preemptive arguments concerning *res judicata* and collateral estoppel. (*See* Opp. at 15–17.)

Section 5901's bearing on CIFPA claims or otherwise defining Section 5901's use of the term "arising out of." The Court must decide whether TIG's claim under the CIFPA is "a cause of action arising out of any final order, decision or award" by the WCAB, which would bar the present suit. Cal. Lab. Code § 5901.

■ "[T]he WCAB is the exclusive forum for resolving employee claims arising out of or incidental to payment of workers' compensation benefits. The [Workers' Compensation Act] sets out an elaborate and complete scheme for adjudicating claims of employees against employers and their insurers. Its underlying purpose is to facilitate a quick, simple and accessible process for claiming and receiving compensation. In keeping with this purpose, proceedings which in any manner concern the recovery of compensation or any right or liability 'arising out of or incidental thereto' must be instituted before the WCAB." *Hughes v. Argonaut Ins. Co.*, 88 Cal. App.4th 517, 527–28, 105 Cal.Rptr.2d 877 (2001).

Culpepper argues that Section 5901 applies here because the suit is premised on Culpepper's allegedly false, fraudulent, and misleading statements to obtain workers compensation. (*Id.* at 5.) Culpepper maintains that the OACR has already resolved all such claims. (*Id.*) He also notes that TIG's suit will necessarily require TIG to prove that the underlying workers' compensation claim was fraudulent.[3] (*Id.*) Finally, Culpepper warns that if Section 5901 does not apply, suits brought under the CIFPA could render every WCAB decision "subject to collateral reversal indefinitely" and strip the WCAB of its power.[4] (Mot. at·5.)

In response, TIG relies on the nature of CIFPA claims to argue that Section 5901 has no bearing here. (Opp. at· 7.) TIG explains that the CIFPA was "specifically designed to encourage insurers to combat various forms of insurance fraud," and therefore it authorizes *qui tam* actions seeking civil penalties for fraudulent claims under Section 1871.7(b). (*Id.* at 7–8 (relying *on People ex rel. Allstate v. Weitzman*, 107 Cal.App.4th 534,·546, 132 Cal. Rptr.2d 165 (2006).) Specifically, TIG notes that a claim under CIFPA Section 1871.7(b) requires an underlying violation of California Penal Code Sections 549, 550, or 551. Here,·the Complaint alleges that Culpepper violated California Penal Code Section 550, which makes it unlawful to "[k]nowingly present or cause to be presented any false or fraudulent claim for the payment of a loss or injury, including payment of a loss or injury under a contract of insurance." Cal. Penal Code § 550(a). TIG argues that because Section 550 criminalizes *attempt* and does not require a showing of detrimental reliance, the violation is complete upon the making of the false or misleading statements in support of a claim. (Opp. at 10–11.) TIG concludes that its suit, which is premised on a· violation of Section 550, does not "arise out of" the final order approving the

---

3. Culpepper also asserts that the OACR was "prima facie evidence that the claim was not fraudulent." (Dkt. 14 ["Reply"] at 3.) However, the WCAB merely found that the settlement agreement "appears fail and adequate and is deemed adequate." (Mot. Ex. C.) Additionally, the parties settled the dispute before the WCAB could adjudicate the merits of the claim. (Opp. at 15–16.)

4. Culpepper argues that the suit is barred by the *Rooker–Feldman* Doctrine, which prevents a party disappointed by a state court result from making a *de facto* appeal to federal court. (Mot. at 7 (citing *Noel v. Hall*, 341 F.3d 1148,· 1155· (9th Cir; 2003).) However, this action was originally brought in state court and it was Culpepper who removed it federal court, so the *Rooker–Feldman* Doctrine does not apply.

settlement agreement. (*Id.* at 11–12.) In other words, because Culpepper's violation of the CIFPA was complete upon making fraudulent or misleading statements to the QMEs, and TIG does not seek to set aside the settlement of the resulting workers' compensation claims, the OACR is "irrelevant" here. (*Id.*)

The term "arising out" denotes a broad causal connection. The dictionary definition of "arise" is "to originate from a source" or "to come into being or to attention." ARISE, Merriam–Webster Online Dictionary, 2015, http://www.merriam-webster.com/ dictionary/arising (last visited October 11, 2016). Additionally, in the insurance coverage context, " 'arising out of' is broad, and is ordinarily understood to mean 'incident to, or having connection with.' " *Imperium Ins. Co. v. Unigard Ins. Co.*, 16 F.Supp.3d 1104, 1118 (E.D. Cal. 2014). While not controlling, this broad definition comports with the use of "arising out" in other state law contexts. *See, e.g., Southgate Recreation & Park Dist. v. California Assn. for Park & Recreation Ins.*, 106 Cal.App.4th 293, 301, 130 Cal.Rptr.2d 728 (2003) (Memorandums of coverage that excluded liability for matters "arising out of or related to" construction contracts required "only a 'slight connection' or an 'incidental relationship' between the injury and the excluded risk."); *EFund Capital Partners v. Pless*, 150 Cal.App.4th 1311, 1322, 59 Cal. Rptr.3d 340 (2007) (broadly construing an arbitration agreement providing that "[a]ny dispute or other disagreement arising from or out of this Consulting Agreement shall be submitted to arbitration" to encompass tort claims).

Accordingly, the present suit "arises out of" the OACR. Culpepper's statements to the QMEs are simply too interconnected to his workers' compensation claim before the WCAB and the OACR approving settlement of his claims. In this suit, TIG asserts that Culpepper made false or misleading statements or omissions to the QMEs, and the parties relied on those very same statements in settling the original workers' compensation claim. If TIG is permitted to proceed in this suit without first seeking reconsideration of the OACR, TIG could obtain a judgment that is inconsistent with the OACR finding that the settlement was "fair and adequate." (Mot. Ex. C.)

The potential damages calculation further demonstrates that the present suit "arises out" of the OACR. CIFPA Section 1871.7(b) provides that one who commits an underlying violation of, *inter alia*, Penal Code Section 550 shall be subject, "in addition to any other penalties that may be prescribed by law, to a civil penalty of not less than five thousand dollars ($5,000) nor more than ten thousand dollars ($10,000), plus an assessment of not more than three times the amount of each *claim for compensation*." Cal. Ins. Code § 1871.7(b) (emphasis added). Additionally, this penalty "shall be assessed for *each fraudulent claim* presented to an insurance company by a defendant and not for each violation." *Id.* (emphasis added). Thus, the CIFPA requires a plaintiff to prove resulting fraudulent claims that are "causally related to the [underlying] violations" in order to obtain monetary damages.[5] *State ex rel. Wilson v. Superior Court*, 227 Cal.App.4th 579, 597, 174 Cal.Rptr.3d 317 (2014), *as modified on denial of reh'g* (July 25, 2014). Here, TIG seeks statutory damages of $10,000 plus "an assessment of three times the amount demanded in the settlement of the workers' compensation claim by Culpepper ($180,000 x 3, or $540,000)," so it would be required to prove that the Cul-

---

**5.** By contrast, a claim for equitable relief under the CIFPA does not require proof of resulting fraudulent claims. *Wilson*, 227 Cal. App.4th at 599, 174 Cal.Rptr.3d 317.

pepper's allegedly fraudulent statements or omissions were casually connected to the original claim. (Compl. ¶ 20.)

Despite TIG's arguments to the contrary, (Opp. at 10–11), the fact that the assessment of damages is based on what was demanded by a defendant in a workers' compensation claim, versus what was paid to him, is immaterial. Ultimately, damages under the CIFPA are based in significant part on the claim, *see Wilson*, 227 Cal.App.4th at 597, 174 Cal.Rptr.3d 317, and TIG seeks three times the amount Culpepper demanded in his original workers' compensation claim. (Compl. ¶ 20.) While the Court understands that the WCAB did not adjudicate the merits of Culpepper's claim, the settlement agreement approved by the WCAB released Fairmont (and by extension, TIG) of Culpepper's workers' compensation claims. (Mot. Ex. C.) TIG's current suit is inextricably linked to the WCAB's final order, and thus, "arises out" of it.

Since the suit is one arising under a final order of the WCAB, TIG must first seek reconsideration of the OACR before proceeding. A contrary finding could turn the CIFPA into a vehicle to evade Labor Code Section 5901 and could seriously undermine the jurisdiction of the WCAB. While the CIFPA was no doubt intended to encourage prosecution of false workers' compensation claims and the Complaint raises serious concerns about the validity of Culpepper's claims, the Court cannot conclude that the CIFPA intended to displace the authority of the WCAB in scenarios where there is already an approved settlement agreement in place.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED. Plaintiff's Complaint is DISMISSED WITHOUT PREJUDICE.

