Filed 11/10/21

# CERTIFIED FOR PARTIAL PUBLICATION*

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

#### DIVISION TWO

| | |
|---|---|
| MITCHELL HUNTER OAKES, | B305535 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC556759) |
| v. | |
| PROGRESSIVE TRANSPORTATION SERVICES, INC., et al., | |
| Defendants and Respondents. | |

     APPEAL from a judgment of the Superior Court of Los Angeles County, Norman P. Tarle, Judge. Affirmed.

     Kyle Scott Law and Kyle J. Scott for Plaintiff and Appellant.

     Prindle, Goetz, Barnes & Reinholtz, Nicholas Paulos, Steven Maslauski; Greines, Martin, Stein & Richland, Laurie J. Hepler and Eleanor S. Ruth for Defendants and Respondents.

---

*     Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part I of the Discussion.

Plaintiff and appellant Mitchell Hunter Oakes (plaintiff) appeals from the judgment and postjudgment orders entered in favor of defendants and respondents Progressive Transportation Services, Inc. (Progressive), and Salvador Guzman (collectively, defendants) in this action arising out of injuries plaintiff sustained in an automobile accident. Plaintiff contends the trial court erred in denying his motion for a new trial based on purported juror misconduct. Plaintiff further contends the trial court erred in concluding defendants' Code of Civil Procedure section 998[1] offer to settle was valid, subjecting plaintiff to the statutory penalty because he recovered less at trial than the amount of the offer. Finally, plaintiff contends the trial court erred by not according priority to reasonable litigation expenses and attorney fees owed to plaintiff's counsel under Labor Code section 3856.

We affirm the judgment.

## FACTUAL BACKGROUND

On March 4, 2013, Guzman rear-ended plaintiff's vehicle. At the time of the accident Guzman was driving a truck for his employer, Progressive, and plaintiff was driving a truck for his employer, Asplundh. In the days following the accident plaintiff reported low back pain, stiffness in his neck, and a strained shoulder muscle. He was prescribed pain medication and a muscle relaxant. Plaintiff returned to work regular hours and duties for the next three weeks, but left his employment in early April 2013.

---

[1] All further statutory references are to the Code of Civil Procedure, unless stated otherwise.

2

During the months following the March 2013 accident, plaintiff continued to receive treatment for pain, including prescription medications, doctor visits, diagnostic tests, and physical therapy. His former employer's workers' compensation insurance carrier, Liberty Insurance Corporation (Liberty), paid for the treatment. In August 2013, plaintiff's pain worsened, and an MRI showed a significantly herniated disc. In September 2014, plaintiff had spinal surgery, which was not approved or paid for by Liberty.

## PROCEDURAL HISTORY
### Pretrial proceedings, trial, and jury verdict

Plaintiff commenced this action against defendants Progressive and Guzman for negligence and negligence per se, seeking damages for past and future medical expenses, pain and suffering, and lost earnings and earning potential. Liberty filed a complaint in intervention, seeking to recover against any judgment a lien for workers' compensation benefits paid to plaintiff, as authorized by Labor Code section 3852. Liberty subsequently assigned its workers' compensation lien to defendants and was dismissed from the case.

In November 2015, defendants served an offer to settle under section 998 for $200,000. Plaintiff rejected the offer.

Before the jury trial commenced the parties stipulated that a workers' compensation lien existed in the amount of $256,631.76; that defendants would admit negligence, but not causation as to plaintiff's injuries; and that notwithstanding the stipulation as to negligence, defendants could present evidence regarding comparative fault. At the parties' request, the trial court read the stipulation to the jury twice, before the presentation of evidence and again before jury deliberation

3

commenced. Also at the parties' request, the trial court instructed the jury pursuant to CACI No. 105 not to consider insurance: "You must not consider whether any of the parties in this case has insurance. The presence or absence of insurance is totally irrelevant. You must decide this case based only on the law and evidence."

The jury returned a verdict of $115,000 in plaintiff's favor, and on January 22, 2020, the trial court entered an initial judgment for that amount in plaintiff's favor.

## Posttrial proceedings and final judgment

### *Motion for new trial*

Plaintiff filed a motion for a new trial, or in the alternative, for additur, arguing that two jurors committed prejudicial misconduct by bringing into deliberations their prior experience and knowledge regarding the workers' compensation system. In support of the motion, plaintiff submitted affidavits from two jurors, Sophia Martinez and Gretchen Kiker, explaining the alleged misconduct and its effect on the jury's deliberations and verdict. The trial court granted defendants' motion to strike portions of the affidavits that discussed the jury's "mental processes" and were therefore inadmissible under Evidence Code section 1150.[2]

---

[2] Evidence Code section 1150, subdivision (a) states: "Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly. No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined."

4

The trial court ruled that what remained of Martinez's and Kiker's affidavits did not establish misconduct, but rather, correctly described the court's instruction not to consider insurance and included general observations about workers' compensation, a matter of common knowledge that the jury could permissibly consider. The trial court took judicial notice of the fact that workers' compensation was a matter of common knowledge in California, citing Evidence Code sections 451, subdivision (f) and 452, subdivision (g).[3]

The trial court noted that the affidavits "demonstrate[d] an unfortunate level of confusion" among the jurors, "conflat[ing] the Workers Compensation lien with insurance." Such confusion, the court stated, was compounded by the parties' instructions and argument. The trial court noted that although the parties both asked the court to read to the jury the stipulation regarding the workers' compensation lien, they never asked the court to further instruct the jury on the meaning of the word "lien" or the significance of the stipulation. The court further noted that plaintiff's counsel told the jury during closing argument "that the workers compensation lien amount would not go to the plaintiff" and that "may have compounded the confusion."

---

[3]     Evidence Code section 451 subdivision (f) requires a court to take judicial notice of "[f]acts and propositions of generalized knowledge that are so universally known that they cannot reasonably be the subject of dispute." (Evid. Code, § 451, subd. (f).) Evidence Code section 452, subdivision (g) allows a court to take judicial notice of "[f]acts and propositions that are of such common knowledge within the territorial jurisdiction of the court that they cannot reasonably be the subject of dispute. (Evid. Code, § 452, subd. (g).)

5

The trial court denied plaintiff's motion for a new trial, concluding: "This is not a matter of concealed bias or the use of specialized knowledge. The affidavit[s] reveal[] an effort to conform universal knowledge or common knowledge with the dictates of the court and the guidance of the attorneys."

### *Labor Code section 3856 motion for fees*

Plaintiff then filed a motion for attorney fees and litigation expenses under Labor Code section 3856, subdivision (b), claiming a $50,600 fee (44 percent of the jury verdict pursuant to his contingency agreement with his attorney), and $28,343.52 in costs. Defendants opposed the motion for fees and moved to tax plaintiff's postoffer section 998 costs, arguing he should not recover fees and postoffer costs because the jury verdict did not exceed defendants' section 998 offer. Defendants argued that plaintiff was entitled to recover only his pre-offer costs—the $475.95 filing fee—and filed a cost memorandum claiming that defendants, as the prevailing parties under section 998, should be awarded their postoffer costs under section 998, subdivisions (c)(1) and (e). Defendants' costs, totaling $174,830.29, consisted primarily of expert witness fees incurred to dispute causation. Plaintiff moved to strike defendants' cost memorandum and opposed defendants' motion to tax his costs.

On April 30, 2020, the trial court, without a hearing, issued a minute order granting plaintiff's motion for $50,600 in attorney fees under Labor Code section 3856, subdivision (b); denying plaintiff's motion to strike defendants' $174,830.29 cost memorandum; and granting defendants' motion to tax plaintiff's postoffer costs under Code of Civil Procedure section 998.

The following day, defendants filed a request for clarification of the trial court's order in which they argued that the order failed to consider defendants' status as prevailing

6

parties under section 998, and that as such, they were entitled to judgment in their favor for their full costs—$174,830.29. Plaintiff objected, arguing he was entitled to $28,343.52 in costs in addition to $50,600 in attorney fees, his claim had priority under Labor Code section 3856, and no penalty under section 998 should apply.

On May 20, 2020, the trial court issued a second minute order ruling that plaintiff's entitlement to attorney fees under Labor Code section 3856 was not subject to the Code of Civil Procedure section 998 penalty provision, but that plaintiff's entitlement to litigation costs was subject to the penalty. The court awarded plaintiff $50,600 in attorney fees and only the $475.98 preoffer filing fee in costs.

Although the trial court noted that Labor Code section 3856 required costs to be paid from the judgment, the court added plaintiff's attorney fees and allowable costs to the jury's $115,000 verdict rather than subtracting them from that amount. The court calculated plaintiff's award as "$115,000 + $50,600 + $475.98 = $166,075.98." The trial court awarded defendants costs of "$174,830.20" under section 998, subdivision (c)(1). The court then concluded "[t]he defense has a net gain over the plaintiff of $8,754.22, and thereby becomes the prevailing party, i.e., 'the party with a NET monetary recovery.'"

Plaintiff then filed a "Request That the Court Clarify and Revise Its Rulings Based Upon Authority Not Previously Considered by the Court," citing *Phelps v. Stostad* (1997) 16 Cal.4th 23 (*Phelps*). Defendants opposed the request as an improper request for reconsideration and argued that the trial court should not have awarded plaintiff any attorney fees under the Labor Code. The trial court declined to consider either party's briefs.

7

On June 23, 2020, the trial court vacated the January 2020 judgment and entered a new final judgment in favor of defendants for $8,754.22, concluding that defendants were the prevailing parties.  Plaintiff appeals from that judgment.

## DISCUSSION

### I.  Motion for new trial[*]

"The standard of review on a new trial motion alleging juror misconduct is abuse of discretion."  (*Sarti v. Salt Creek Ltd.* (2008) 167 Cal.App.4th 1187, 1213.)  "To the extent that the trial court confronted conflicting declarations in denying the new trial motion, we affirm the trial court's factual determinations, whether express or implied, if supported by substantial evidence.  [Citations.]  . . . 'In our review of such order *denying* a new trial . . . we must fulfill our obligation of reviewing the entire record, including the evidence, so as to make an independent determination as to whether the error was prejudicial.'"  (*Sandoval v. Los Angeles County Dept. of Public Social Services* (2008) 169 Cal.App.4th 1167, 1176, fn. 6.)

The record discloses no abuse of discretion.  The admitted portions of the juror affidavits submitted in support of plaintiff's new trial motion are not substantial evidence of juror misconduct.  The affidavits state that Jurors Cynthia McLean and Robert Zettler told the other jury members that "the Workers Compensation lien was insurance and that we were told not consider insurance" and that because the "doctors and medical bills were already paid by insurance the jury could not award [plaintiff] those damages."  Zettler based the latter statement on

---

[*]    See footnote, *ante*, page 1.

8

his "experience with workers' compensation in his job."  As the trial court explained, these statements do not constitute misconduct because they were based on information from permissible sources:  the court's instructions, the parties' stipulation, plaintiff's counsel's closing argument, and "general knowledge in the community about the function of workers compensation."

The trial court stated:  "The statements that the jury is not to consider insurance is a correct statement of the general instruction given by the court, CACI 105, and appears to be an effort to comply with the court's instructions."  The reference to the workers' compensation lien as insurance was based on "a jointly requested stipulation" and CACI No. 105 was "provided to the court as part of the jointly filed and requested jury instructions."  The trial court noted that "[t]he jurors were therefore . . . entitled to consider each of those facts, as well as their interrelationship."

The trial court took judicial notice of the fact that "the prevalence of Workers Compensation as a form of insurance, that is, coverage for medical expenses due to on-the-job injury, within California" is common knowledge or universally known.  The court accordingly concluded that Zettler's statement that "'he had experience with Workers Compensation in his job and that he knew how it works' adds nothing of substance by itself. . . .  It may well be that Zettler did have additional experience, but if his information was discernible from sources the jury was permitted to use, then any improper statement was nugatory.  How the jury processed the information is barred by Evidence Code section 1150 and may not be considered by this court."  Plaintiff does not challenge the trial court's evidentiary rulings taking judicial notice of workers' compensation as a form of insurance for work-

9

related injuries or striking portions of the affidavits that were inadmissible under Evidence Code section 1150.

Plaintiff contends the jury improperly considered the fact that workers' compensation paid for medical expenses included in the workers' compensation lien because there was no evidence that the lien was insurance or that plaintiff was not entitled to recover those expenses. Plaintiff's counsel provided this information to the jury, however, when he argued: "[W]rite this other number down, [$]209,670.21. That's the past medical expenses that are not part of the workers' compensation lien. [$]209,670.21. And when you add that with the workers' comp lien, it's [$]466,301.97. [T]hat's his past economic losses. That's for the workers' comp and for the surgery; [$]466,301.97. Remember, the workers' comp lien, that's not going to [plaintiff]." To the extent the jury considered that some medical expenses were paid by workers' compensation insurance and that plaintiff would not receive any damages awarded for the amount of the workers' compensation lien, it did so at plaintiffs' invitation.

The record does not support plaintiff's suggestion that Jurors McLean and Zettler concealed during voir dire any bias or special knowledge concerning workers' compensation. Their nonresponse to a general question as to whether the jurors had "a problem with the fact that they're going to be asked to say a number of pain and suffering, a number for the workers' compensation lien" was not substantial evidence of misconduct. (See *Hasson v. Ford Motor Co.* (1982) 32 Cal.3d 388, 408 [juror's failure to volunteer that his son died from resulting brain injuries sustained in automobile accident when jury was asked on voir dire if any of them had "'dealt with brain injuries'" was insufficient proof of bias].)

10

Juror McLean's purported discussion of workers' compensation with another juror evidences neither bias nor specialized knowledge.  In response to concerns expressed by plaintiff's counsel, the trial court admonished and ordered the jury "not to discuss the case amongst yourselves or with anyone else."

*Tapia v. Barker* (1984) 160 Cal.App.3d 761, on which plaintiff relies, is distinguishable.  Jurors deliberating in that case made racist and disparaging remarks about the plaintiff's Mexican ethnicity and discussed collateral sources of compensation, including disability, welfare, and unemployment, when there was no evidence of such collateral sources.  (*Id.* at pp. 764-765.)  The jurors here did not introduce the subject of workers' compensation insurance into the case.  The parties did.

The trial court did not abuse its discretion by denying the motion for new trial based on juror misconduct.

## II.    Section 998 offer

"[S]ection 998 establishes a procedure to shift costs if a party fails to accept a reasonable settlement offer before trial.  The purpose of the statute is to encourage pretrial settlements."  (*Fassberg Construction Co. v. Housing Authority of City of Los Angeles* (2007) 152 Cal.App.4th 720, 764 (*Fassberg*).)  If the party who prevails at trial obtains a judgment less favorable than a pretrial settlement offer submitted by the other party, then the prevailing party cannot recover its own postoffer costs but must pay its opponent's postoffer costs, including, potentially, expert witness fees.  (§ 998, subd. (c)(1); *Barella v. Exchange Bank* (2000) 84 Cal.App.4th 793, 798.)

An offer to compromise under section 998 "must be sufficiently specific to allow the recipient to evaluate the worth of the offer and make a reasoned decision whether to accept the

11

offer.  Any nonmonetary terms or conditions must be sufficiently certain and capable of valuation to allow the court to determine whether the judgment is more favorable than the offer." (*Fassberg, supra*, 152 Cal.App.4th at p. 764.)  Whether an offer is sufficiently specific and certain under section 998 is an issue we review de novo.  (*Fassberg*, at p. 765.)

Defendants' section 998 offer was sufficiently certain and capable of valuation.  It contained no vague or nonmonetary terms.  The offer stated that defendants "hereby offer to allow judgment to be taken against them in the total sum of TWO HUNDRED THOUSAND DOLLARS ($200,000.00), with all parties bearing their own fees and costs."

That the section 998 offer did not refer to the workers' compensation lien and state whether settlement proceeds could be used to recoup the lien does not render the offer uncertain or invalid.  A party making a section 998 offer "need not take into account a lien against the judgment when making the offer." (*Manthey v. San Luis Rey Downs Enterprises, Inc.* (1993) 16 Cal.App.4th 782, 791 (*Manthey*), citing *Culbertson v. R. D. Werner Co., Inc.* (1987) 190 Cal.App.3d 704, 708.)

*Chen v. Interinsurance Exchange of the Automobile Club* (2008) 164 Cal.App.4th 117 and *MacQuiddy v. Mercedes-Benz USA, LLC* (2015) 233 Cal.App.4th 1036, which plaintiff cites in support of his position, are distinguishable.  The offer to settle in *Chen* required a "general release of all claims" and was ambiguous as to whether it barred future lawsuits for other pending claims.  (*Chen*, at p. 122.)  The offer in *MacQuiddy* included a conditional term offering to repurchase a car "'in an undamaged condition, save normal wear and tear.'"  (*MacQuiddy*, at p. 1050.)  The court in *MacQuiddy* concluded the condition "inserted uncertainty into the offer" as the term "undamaged

12

condition" was undefined and required a factual determination. (*Ibid.*) The offer was accordingly invalid. (*Ibid.*) No such ambiguities exist in the section 998 offer at issue here. The trial court did not err by concluding that defendants' section 998 offer was sufficiently certain and valid.

## III. Code of Civil Procedure section 998 and Labor Code section 3856

When employers or employees sue third party defendants for injuries subject to workers' compensation, Labor Code section 3856 governs the allocation of any judgment.[4] "That statute

---

[4] Labor Code section 3856 states: "In the event of suit against such third party: [¶] (a) If the action is prosecuted by the employer alone, the court shall first order paid from any judgment for damages recovered the reasonable litigation expenses incurred in preparation and prosecution of such action, together with a reasonable attorney's fee which shall be based solely upon the services rendered by the employer's attorney in effecting recovery both for the benefit of the employer and the employee. After the payment of such expenses and attorney's fees, the court shall apply out of the amount of such judgment an amount sufficient to reimburse the employer for the amount of his expenditure for compensation together with any amounts to which he may be entitled as special damages under Section 3852 and shall order any excess paid to the injured employee or other person entitled thereto. [¶] (b) If the action is prosecuted by the employee alone, the court shall first order paid from any judgment for damages recovered the reasonable litigation expenses incurred in preparation and prosecution of such action, together with a reasonable attorney's fee which shall be based solely upon the services rendered by the employee's attorney in effecting recovery both for the benefit of the employee and the employer. After the payment of such expenses and attorney's fee the court shall, on application of the employer, allow as a first lien against the amount of such judgment for damages, the

---

provides that whether the third party is sued by the employer alone (§ 3856, subd. (a)), the employee alone (§ 3856, subd. (b)), or both the employer and the employee (§ 3856, subd. (c)), any resulting judgment shall be used first to pay the 'reasonable litigation expenses incurred in preparation and prosecution of such action, together with a reasonable attorney's fee.'  (§ 3856, subd. (b).) Next, the judgment shall be used to reimburse the employer for the amount of compensation paid to the employee.

---

amount of the employer's expenditure for compensation together with any amounts to which he may be entitled as special damages under Section 3852.  [¶]  (c) If the action is prosecuted both by the employee and the employer, in a single action or in consolidated actions, and they are represented by the same agreed attorney or by separate attorneys, the court shall first order paid from any judgment for damages recovered, the reasonable litigation expenses incurred in preparation and prosecution of such action or actions, together with reasonable attorneys' fees based solely on the services rendered for the benefit of both parties where they are represented by the same attorney, and where they are represented by separate attorneys, based solely upon the service rendered in each instance by the attorney in effecting recovery for the benefit of the party represented.  After the payment of such expenses and attorneys' fees the court shall apply out of the amount of such judgment for damages an amount sufficient to reimburse the employer for the amount of his expenditures for compensation together with any other amounts to which he may be entitled as special damages under Section 3852.  [¶]  (d) The amount of reasonable litigation expenses and the amount of attorneys' fees under subdivisions (a), (b), and (c) of this section shall be fixed by the court. Where the employer and employee are represented by separate attorneys they may propose to the court, for its consideration and determination, the amount and division of such expenses and fees."

Any remaining portion of the judgment goes to the injured employee." (*Phelps, supra*, 16 Cal.4th at p. 30.)

A.   ***Section 998***

Except as otherwise provided by statute, the prevailing party in an action or proceeding is entitled, as a matter of right, to recover its costs. (§ 1032, subd. (b).) A prevailing party's entitlement to costs may be affected, however, by a refusal to accept a pretrial settlement offer under section 998. For example, a plaintiff who rejects a defendant's section 998 offer and fails to obtain a more favorable judgment at trial faces both mandatory and discretionary penalties. (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2021) ¶ 12:648.) The mandatory penalties imposed by section 998 preclude such a plaintiff from recovering any postoffer costs (although preoffer costs are recoverable if the plaintiff is the prevailing party), and require the plaintiff to pay the defendant's postoffer costs. If the defendant's postoffer costs exceed the amount of damages awarded to the plaintiff, a judgment must be entered against the plaintiff for the net excess. (§ 998, subd. (e); Weil & Brown, ¶ 12:648.1.) As a discretionary penalty, a court may also order the plaintiff to pay the defendant's postoffer expert witness fees. (§ 998, subd. (c).)

Section 998 states in relevant part:

"(c)(1) If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the plaintiff shall not recover his or her postoffer costs and shall pay the defendant's costs from the time of the offer. In addition, in any action or proceeding other than an eminent domain action, the court or arbitrator, in its discretion, may require the plaintiff to pay a reasonable sum to cover postoffer costs of the services of expert witnesses,

15

who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the defendant. [¶] . . . [¶]

"(e) If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the costs under this section, from the time of the offer, shall be deducted from any damages awarded in favor of the plaintiff. If the costs awarded under this section exceed the amount of the damages awarded to the plaintiff the net amount shall be awarded to the defendant and judgment or award shall be entered accordingly."

To determine whether a plaintiff has obtained a judgment or award more favorable than a defendant's offer under section 998, a trial court must calculate the "net judgment," considering the status of the litigation at the time the section 998 offer was outstanding. (See *Scott Co. v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1111-1112 (*Scott*).) To do so, the court must add to the judgment or award costs incurred by the plaintiff prior to the offer,[5] including preoffer attorney fees in any case in which attorney fees are otherwise awardable as costs.[6] The court must

---

[5]     Section 998 expressly excludes a plaintiff's postoffer costs when determining whether the plaintiff obtained a more favorable judgment. (§ 998, subd. (c)(2)(A).) By expressly excluding postoffer costs, the statute indicates that preoffer costs are included in determining whether the judgment is more favorable than the section 998 offer. (*Heritage Engineering Construction, Inc. v. City of Industry* (1998) 65 Cal.App.4th 1435, 1441.)

[6]     Section 998 does not provide greater rights to attorney fees than provided for by the underlying statute or contract. A party

16

then deduct from the judgment or award the defendant's postoffer costs allowable under section 1033.5 (§ 998, subd. (a); *Scott*, at pp. 1112-1113), and any postoffer expert witness fees assessed against the plaintiff in the court's discretion. (§ 998, subd. (c)(1), (e); *Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985, 1000.) A trial court may not deduct, however, any liens against the plaintiff's award, including any workers' compensation lien, when determining whether the plaintiff obtained a more favorable judgment or award. (*Poire v. C.L. Peck/Jones Brothers Construction Corp.* (1995) 39 Cal.App.4th 1832, 1842 (*Poire*); *Manthey, supra*, 16 Cal.App.4th at p. 789.) If the defendant's postoffer costs exceed the damages awarded to the plaintiff, a judgment in the net amount of the difference must be entered in the defendant's favor. (§ 998, subd. (e); see *Elite Show Services, Inc. v. Staffpro, Inc.* (2004) 119 Cal.App.4th 263, 267.)

The purpose of section 998 is "'to encourage settlement by providing a strong financial disincentive to a party—whether it be a plaintiff or a defendant—who fails to achieve a better result

---

with no statutory or contractual basis to recover attorney fees cannot add them to the verdict when deciding whether a section 998 offer was exceeded. (See *Scott, supra*, 20 Cal.4th at pp. 1111-1112 [plaintiff who rejects settlement offer greater than the recovery it ultimately obtains may recover preoffer costs, including preoffer attorney fees where attorney fees are an authorized category of recoverable costs under §§ 1032 and 1033.5].) Attorney fees are not an authorized category of recoverable costs in this case involving claims of negligence and negligence per se. (*Gray v. Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 506 (*Gray*) [attorney fees not generally available to prevailing parties in tort actions].)

than that party could have achieved by accepting his or her opponent's settlement offer.'" (*Burchell v. Faculty Physicians & Surgeons etc.* (2020) 54 Cal.App.5th 515, 532.) "'Section 998 must be strictly construed in favor of the party sought to be subjected to its operation.'" (*People ex rel. Lockyer v. Fremont General Corp.* (2001) 89 Cal.App.4th 1260, 1264, quoting *Garcia v. Hyster Co.* (1994) 28 Cal.App.4th 724, 732-733.)

### B.    *Labor Code section 3856*

Labor Code section 3856 is part of the statutory scheme that governs personal injury actions against third party tortfeasors by employees who have received workers' compensation benefits. (Lab. Code, §§ 3850-3865.) When a worker is entitled to workers' compensation benefits for an injury, those benefits are generally the worker's exclusive remedy against the worker's employer for injuries sustained in the course of employment. (Lab. Code, § 3602, subd. (a); *Phelps, supra*, 16 Cal.4th at p. 30.) The worker may, however, sue a negligent third party who caused the injury. (Lab. Code, § 3852.)

The employer is likewise entitled to recover from the negligent third party the amount of workers' compensation benefits paid to the injured worker. (Lab. Code, § 3852.) "Employer" in this context includes the employer's workers' compensation insurer. (Lab. Code, § 3850; *Fidelity & Casualty Co. v. McMurry* (1963) 217 Cal.App.2d 767, 769.) The employer or workers' compensation insurer may sue the third party directly, intervene in the worker's action against the third party, or assert a lien or right of reimbursement against any judgment obtained by the injured employee to recover the amount paid in workers' compensation benefits. (Lab. Code, §§ 3852, 3856,

18

subd. (c); *Quinn v. State of California* (1975) 15 Cal.3d 162, 167; *Manthey, supra*, 16 Cal.App.4th at pp. 786-787.)

"[Labor Code] [s]ection 3856 governs the allocation between the employee and the employer of a judgment obtained against a negligent third party." (*Phelps, supra*, 16 Cal.4th at p. 30.) When, as was the case here, the employee solely litigated the action, Labor Code section 3856, subdivision (b) gives the employee a priority right to reimbursement of litigation expenses before the employer or workers' compensation insurer is reimbursed for workers' compensation benefits. The statute provides:

> "If the action is prosecuted by the employee alone, the court shall first order paid from any judgment for damages recovered the reasonable litigation expenses incurred in preparation and prosecution of such action, together with a reasonable attorney's fee which shall be based solely upon the services rendered by the employee's attorney in effecting recovery both for the benefit of the employee and the employer. After the payment of such expenses and attorney's fee the court shall, on application of the employer, allow as a first lien against the amount of such judgment for damages, the amount of the employer's expenditure for compensation together with any amounts to which he may be entitled as special damages under Section 3852." (Lab. Code, § 3856, subd. (b).)

Labor Code section 3856 is a statutory application of the "so-called 'common fund doctrine.' [Citation.] That is, a party who expends attorney fees in winning a lawsuit which creates a fund from which others derive benefits may require those passive beneficiaries to bear a fair share of the litigation costs. The amount of the judgment owing to the passive beneficiary

19

may be reduced to compensate the active litigant for his attorney fees." (*Walsh v. Woods* (1986) 187 Cal.App.3d 1273, 1276.)

The priority scheme established by Labor Code section 3856 is not dependent on whether the judgment obtained exceeds the amount of the employer's lien. "The rule giving priority to the claim for litigation expenses and attorney fees was created for cases like the present one in which the amount of the judgment is insufficient to pay reasonable litigation expenses and attorney fees and also fully reimburse the employer." (*Phelps, supra*, 17 Cal.4th at pp. 30-31.) "[T]he Legislature in enacting [Labor Code] section 3856, created a priority scheme which assures the worker the services of an attorney by guaranteeing priority to attorney fees in the event a judgment is insufficient to recompense the worker and satisfy the employer's claim." (*Manthey, supra*, 16 Cal.App.4th at p. 789.)

### C. *Application of Labor Code section 3856 and Code of Civil Procedure section 998*

#### 1. *General legal principles*

The parties here agree that the trial court erred by adding to, rather than subtracting from the judgment the $50,600 in attorney fees incurred by plaintiff. They disagree on the sequence in which the statutes at issue should be applied and which statute takes priority in application.

Plaintiff contends his attorney fees and litigation expenses are entitled to priority under Labor Code section 3856 and should be deducted from the $115,000 verdict and initial judgment entered in his favor before satisfying the workers' compensation lien and before applying the cost-shifting provisions of Code of Civil Procedure section 998. Defendants maintain the cost-shifting provisions of section 998 should apply before the Labor

20

Code section 3856 allocations.  Resolution of this question involves issues of statutory construction, which we review de novo.  (*Citizens for a Responsible Caltrans Decision v. Department of Transportation* (2020) 46 Cal.App.5th 1103, 1120.)

"'A fundamental rule of statutory construction is that a court should ascertain the intent of the Legislature so as to effectuate the purpose of the law.  [Citations.]  In construing a statute, our first task is to look to the language of the statute itself.  [Citation.]  When the language is clear and there is no uncertainty as to the legislative intent, we look no further and simply enforce the statute according to its terms.  [Citations.]  [¶] Additionally, however, we must consider the [statutory language] in the context of the entire statute [citation] and the statutory scheme of which it is a part.  "We are required to give effect to statutes 'according to the usual, ordinary import of the language employed in framing them.'  [Citations.]"  [Citations.]  "'If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose.'  [Citation.]  . . . . 'When used in a statute [words] must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear.'  [Citations.]  Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole."'"  (*Phelps, supra*, 16 Cal.4th at p. 32.)

If statutes "conflict on a central element, we strive to harmonize them so as to give effect to each.  If conflicting statutes cannot be reconciled, later enactments supersede earlier ones [citation], and more specific provisions take precedence over more general ones [citation].  Absent a compelling reason to do otherwise, we strive to construe each statute in accordance with

21

its plain language." (*Collection Bureau of San Jose v. Rumsey* (2000) 24 Cal.4th 301, 309-310.)

    **2.**  *The statutory language requires Code of Civil Procedure section 998 to be applied before Labor Code section 3856*

   The plain language of Code of Civil Procedure section 998 and Labor Code section 3856, read together, dictate the sequence in which those statutes should be applied.  Section 998, subdivision (e) states that when a plaintiff fails to obtain a more favorable judgment or award than a defendant's section 998 offer, the costs awarded to the defendant "shall be deducted from any *damages awarded in favor of the plaintiff.  If the costs awarded under this section exceed the amount of the damages awarded to the plaintiff the net amount shall be awarded to the defendant and *judgment or award shall be entered accordingly*." (§ 998, subd. (e), italics added.)  The statute requires deduction of the defendant's postoffer costs from the plaintiff's damages award; then if the costs exceed the amount of the award, as was the case here, a judgment must be entered in the defendant's favor.  Section 577 defines "judgment" as "the final determination of the rights of the parties in an action or proceeding."[7]  Section 998 thus contemplates entry of a final judgment between the parties after its cost-shifting provisions have been applied.

---

[7]  The Legislature amended section 998 in 1997 to include the term "award" when determining whether the plaintiff obtained "a more favorable judgment or award." (Stats. 1997, ch. 892, § 1.)  The statutory language as amended does not strictly require entry of judgment, but contemplates a final determination of the parties' claims.  (See *American Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton* (2002) 96 Cal.App.4th 1017, 1055-1056.)

22

The plain language of Labor Code section 3856 contemplates the existence of a judgment. Labor Code section 3856, subdivision (b) states that when an employee alone prosecutes an action against a third party tortfeasor, "the court shall first order paid *from any judgment for damages recovered* the reasonable litigation expenses incurred in preparation and prosecution of such action, together with a reasonable attorney's fee . . . . After the payment of such expenses and attorney's fee the court shall . . . allow as a first lien against the amount of *such judgment* for damages, the amount of the employer's expenditure for compensation . . . ." (Lab. Code, § 3856, subd. (b), italics added.) As noted, under section 577 a judgment is the final determination of the parties' rights and therefore must reflect any cost shifting under section 998. The cost shifting under section 998 must therefore occur before ordering payment from the judgment litigation expenses and attorney fees under Labor Code section 3856.

> **3.** *Applying Code of Civil Procedure section 998 before Labor Code section 3856 is consistent with case authority*

Applying the cost-shifting provisions of Code of Civil Procedure section 998 before the Labor Code section 3856 allocations is consistent with applicable case authority. As the court in *Manthey* stated: Labor Code section 3856, subdivision (b) "requires in unambiguous language, that a workers' compensation lien be satisfied out of the *judgment* and not the verdict. 'It is for the court, *after judgment has been entered* (*or concurrently therewith*) to make the orders provided for by subdivision (b) of section 3856 of the Labor Code.' [Citation.] 'If the employer elects [to abstain and claim a lien on the judgment] . . . it is clear that the jury is not concerned, in arriving

23

at its verdict, with the rights of the employer and that the verdict and judgment may properly refer only to the plaintiff and to the third party tortfeasor.'" (*Manthey, supra*, 16 Cal.App.4th at p. 789.) The court in *Manthey* explained that "[t]he workers' compensation lien is an interest in future acquired property, and that property—the judgment—does not exist until a judgment has been entered. . . . Thus, it is error to offset the amount of the lien against the verdict. Rather, the lien should be taken in partial satisfaction of the judgment after it is entered." (*Ibid.*) Other appellate courts have agreed. "We follow the reasoning of the *Manthey* court in concluding that the section 998 determination should be made before workers' compensation benefits are deducted from the judgment." (*Poire, supra*, 39 Cal.App.4th at p. 1842.)

*Phelps, supra*, 16 Cal.4th 23, on which plaintiff relies, undermines rather than supports his position. The high court in that case examined the interplay between Labor Code section 3856 and Code of Civil Procedure section 1141.21, former subdivision (a)(ii),[8] a cost-shifting statute similar to section 998.[9]

---

[8]     Section 1141.21 was subsequently amended and renumbered. The language of the current statute, section 1141.21, subdivision (a)(1)(B) remains unchanged from section 1141.21, former subdivision (a)(ii).

[9]     Section 1141.21, former subdivision (a)(ii) governed the recovery of costs when a party elected a trial de novo following a judicial arbitration. It stated in relevant part: "(a) If the judgment upon the trial de novo is not more favorable in either the amount of damages awarded or the type of relief granted for the party electing the trial de novo than the arbitration award, the court shall order that party to pay the following nonrefundable costs and fees . . . . [¶] . . . [¶] (ii) To the other

24

The plaintiff in *Phelps*, who suffered a workplace injury caused by a third party defendant, rejected an arbitration award in his favor and obtained a less favorable judgment following a trial de novo. The trial court ruled that section 1141.21, former subdivision (a)(ii) precluded the plaintiff from recovering his litigation expenses and attorney fees under Labor Code section 3856, and the appellate court affirmed.

The Supreme Court reversed, concluding that section 1141.21, former subdivision (a)(ii) does not preclude application of Labor Code section 3856 because litigation expenses and attorney fees under the latter statute are not recoverable costs, but payments to be made from the judgment: "[E]ven when a party who has elected a trial de novo following judicial arbitration is precluded by section 1141.21[, former subdivision] (a)(ii) from recovering his or her costs, the proceeds of the judgment obtained by the party are subject to allocation pursuant to the provisions of [Labor Code] section 3856, including the use of the judgment for the payment of reasonable litigation expenses and attorney fees." (*Phelps, supra*, 16 Cal.4th at p. 34.) The court explained that a party does not "'recover' costs" in contravention of section 1141.21, former subdivision (a)(ii) "simply because a portion of the judgment that the party has been awarded is used to pay litigation expenses or attorney fees." (*Phelps*, at p. 33.)

Distribution of a judgment occurs after the judgment is final. A judgment is not final until costs have been allocated under section 998. Plaintiff's failure to obtain a more favorable

---

party or parties, all costs specified in Section 1033.5, and the party electing the trial de novo shall not recover his or her costs." (§ 1141.21, former subd. (a)(ii).)

25

judgment after rejecting defendant's section 998 offer did not preclude him from recovering his reasonable litigation expenses and attorney fees from any final judgment entered in his favor. (*Phelps, supra*, 16 Cal.4th at pp. 30-31, 34.)

> **4.** *The trial court erred in its calculation of the net judgment and its application of Labor Code section 3856*

We agree with the parties that the trial court erred by adding plaintiff's $50,600 in attorney fees to the $115,000 jury verdict when calculating the net judgment under section 998. Attorney fees are not an authorized category of recoverable costs in this case involving claims of negligence and negligence per se. (*Gray, supra*, 35 Cal.3d at p. 506 [attorney fees not generally available to prevailing parties in tort actions].)

The trial court should have entered an order awarding plaintiff $475.98 in preoffer costs. Plaintiff's total damages award would have totaled $115,475.98 ($475.98 + the $115,000 jury verdict). The court should then have deducted from the $115,475.98 award the $174,830.29 in postoffer costs awarded to defendants under section 998. A judgment in the resulting net amount of $59,354.31 should then have been entered in defendants' favor. This result would conform to section 998, subdivision (e).

Only after entry of the judgment should the trial court have then applied Labor Code section 3856. Because the resulting judgment was in defendants' favor, there was no "judgment for damages recovered" in favor of plaintiff from which plaintiff's reasonable litigation expenses and attorney fees or Progressive's workers' compensation lien could be paid. (Lab. Code, § 3856, subd. (b).)

26

Plaintiff fails to establish any basis for reversing the judgment entered in defendants' favor. Defendants did not cross-appeal, and they do not challenge the $8,754.22 final judgment entered in their favor. Absent such a challenge, we have no basis for overturning the $8,754.22 judgment entered in defendants' favor.

## DISPOSITION

The judgment is affirmed. Each side is to bear its own costs.

_____
CHAVEZ, J.

We concur:


_____
LUI, P. J.


_____
HOFFSTADT, J.

27